SHANNON, Judge.
The Continental Casualty Company, a foreign corporation, and Florida Tank Lines, Inc., a Florida corporation, appellees herein, filed their complaint in the court below seeking a declaratory decree as to their rights and duties under a certain policy of general liability insurance issued by Continental to Florida Tank Lines.. The appellant was one of the defendants in the court below, and appeals from an adverse declaratory decree which held that the policy of insurance did not inure to his benefit or to the benefit of certain other defendants.
The parties are in agreement as to the facts. Jareo Construction Company (not a party to this suit) was completing a contract which it had with the United States government, Jareo being the prime contractor. In order to complete the project, Jareo had to return certain barges which it had rented, which barges were then afloat on a lake. To effectuate their removal from the lake, Jareo entered into a rental agreement with Florida Welding & Erection Service (not a party herein) whereby the latter supplied a crane mounted upon a motor vehicle. Florida Welding also supplied a driver, Bobby Gene Respress, and a crane operator, Billy Hammond. The crane was to be used to place the barges upon certain trucks rented from Appellee Florida Tank Lines, Inc.
At the time in question, the crane was being operated by Billy Hammond, who had just completed loading one of the trucks leased from Florida Tank Lines. As the truck moved away in order to allow another truck to come into position, but before such truck had come into 'position, Hammond began swinging the crane back over the lake. In the meantime, Bobby Gene Respress, the driver from Florida Welding, had placed himself upon the ball weight at the end of the crane cable, in order to swing out to the next barge and be of assistance.1 However, as the crane cable reached the barge, the crane touched a high tension wire or got so close that the current arched across the crane cable. The electricity shocked and injured Respress, and Appellant Rogers, who was positioned on the barge, and who tried to assist Respress, was also injured. The second truck of Florida Tank Lines was still not in loading position at the time of the accident.
The complaint in this case is primarily concerned with whether Continental, as Florida Tank Lines’ insurance carrier, owes any duty to defend Hammond or to pay any liabilities that may be imposed upon him by reason of this accident. It is argued by the appellant that since Hammond was loading trucks owned by Florida Tank Lines, and since this is a “purpose of use” under the insurance policy, Flammond thereby be *643 came an “insured” under said policy and was entitled to coverage.
The policy contained the usual general liability insurance agreements to the effect that Continental would pay to the insured all sums which the insured should become legally obligated to pay as damages because of bodily injuries sustained by any person caused by accident arising out of the ownership, maintenance or use of any automobile. The policy also contained certain exclusions, such as injury to any employee of the insured arising out of and in the course of 1) domestic employment by the insured, or 2) other employment by the insured. It also defined “purposes of use” to mean that “use of an automobile includes the loading and unloading thereof.” There were also certain endorsements that provided, in substance, that the insurance afforded by the policy for bodily injury liability applied with respect to all owned automobiles and hired automobiles, and the use in the business of the named insured of non-owned automobiles, subject to the other provisions of the endorsement. The endorsement then had a Definition of Insured that provided in part as follows:
“ * * * [T]he unqualified word ‘insured’ includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, * *
The appellant has two points in his brief, namely: 1) Whether or not Billy Hammond was an insured under the insurance policy issued by Continental Casualty to Florida Tank Lines; and 2) whether or not Albertis Rogers, Billy Hammond and Bobby Gene Respress were fellow servants and engaged in a common employment under a common employer. In view of the fact that our answer to the first question is decisive of this case we will not attempt to answer the appellant’s second question.
The trial court found as a matter of fact and of law that Florida Tank Lines had two insured vehicles in the vicinity of the accident; that neither of these vehicles was being used by Hammond; and that Hammond, Rogers and Respress were all fellow servants. The court also found that even if Hammond were considered to be an insured under the terms of the policy, said policy did not undertake to indemnify Hammond for injuries which he, Hammond, inflicted upon fellow servants of his, to wit, Rogers and Respress.
It is important to note that Continental has contracted to indemnify Florida Tank Lines, Inc., under certain circumstances for certain casualties. It has also agreed to indemnify other persons who are using the insured vehicles with the knowledge and consent of the owner, i. e., the named insured ; but only against liability for certain eventualities, excluding such extended coverage for other eventualities. The insured may from time to time, in the words of appellees’ brief, “ * * * by reason of the operation of the rule of respondeat superior, be liable to respond in damages for the tortious conduct of its .employees under master and servant law, even where the actual physical operation of an insured motor vehicle is not the efficient cause of the claim. To protect the named insured from liability under these circumstances, this policy extends coverage to indemnify the named insured for liability for a loss to which it may be subjected for injuries arising out of the maintenance and use of the named vehicles and of non-owned vehicles when used and operated by the named insured in the named insured’s business. It is in this context, of course, that the definition of ‘use’ was extended to include the ‘loading and unloading’ of insured vehicles. * * * ”
We are concerned, therefore, with the question of the “use” and the “loading and unloading” of the motor vehicles covered by the policy. It is only with two of the motor vehicles that we are concerned, that is, Truck No. 1 and Truck No. 2. Truck *644 No. 1 had been loaded and that loading had been terminated. Respress chose to ride the cable swung by the crane out over the water to a barge still located in the lake. None of the insured’s agents or employees had any part in this hazardous journey. Respress was riding a crane being operated by an employee other than one of the insured, and Appellant Rogers gratuitously came to the assistance of Respress and was injured in the process. We therefore must determine this one question — Was Hammond by any interpretation indulging in the “use” of insured’s trucks; or, stated another way, was he “loading or unloading” the trucks of the insured?
We have many cases cited by both appellant and appellees, but in no case can we find the same or similar facts to those we have here. In 160 A.L.R. 1259 is an annotation on this general subject, but none of the cases cited therein cover the instant case. There is, however, a statement of the general rule on page 1260 of the annotation, which states that:
“ * * * [T]he intention of the parties is the controlling factor, that the terms ‘loading and unloading’ are to be taken in their plain and ordinary sense, and that the policy of insurance is to be construed as a whole.”
And on page 1261:
“An accident is causally connected with the process of loading or unloading within the meaning of the clause if the loading or unloading was its efficient and predominating cause.”
This annotation follows a report of the case of Pacific Automobile Insurance Co. v. Commercial Casualty Insurance Co., 1945, 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251, in which the Supreme Court of Utah interpreted an insurance policy and held, that to be within the coverage of a policy insuring a truck owner against liability for damage while loading or unloading, there must be some causal relationship between the use of the insured vehicle as a vehicle, and the accident for which recovery is sought. The annotation discusses the scope of the “loading and unloading” clause, stating that the courts in deciding when “unloading” ends and delivery begins, or when the action preparatory to loading ends and “loading” begins, are guided by one of two theories— the “coming to rest” doctrine or the “complete operation” doctrine. The latter is obviously more inclusive than the former. But regardless of whether this court might adopt the theory of “coming to rest” or the other theory of “complete operation,” the facts that we have will fit into neither. In other words, we do not think that the facts here will operate in the ambit of either doctrine, and so it is unnecessary for us, in this opinion, to state which doctrine we would follow. In the Ohio case of Travelers Insurance Company v. Buckeye Union Casualty Company, 1961, 172 Ohio St. 507, 178 N.E.2d 792, the court said:
“But where, as here, the injury is caused by a third party who is not connected with the truck, who has no legal relationship to the named insured, and who under normal circumstances would not be using the truck of the named insured, it must first appear, before the liability provisions of the policy become applicable, that such third party was in the actual use of the truck at the time of the injury, with the express or implied permission of the named insured.”
In a declaratory action in the same case, at 160 N.E.2d 874, there had been an excellent discussion of the above two mentioned theories.
In the present case, as in the Travelers Insurance Company case, there was no^ legal relationship between the party causing the injury and the named insured. Nor was there any causal connection between the accident and the process of loading or unloading. In order to extend coverage to Hammond in this case, we would have to find that he was “using” one of the two trucks, or, in other words, that he was loading one of them. But here the loading *645 of the first truck was completed, and the second truck was not in position. We hold that Hammond was not using any vehicle insured by Continental under this policy at the time of the accident, and he was therefore not insured by the policy.
No error being made to appear in the trial court’s determination of this case, we affirm.
Affirmed.
KANNER, Acting C. J., and McNATT, JOHN M., Associate Judge, concur.