## UNITED STATES FIDELITY & GUARANTY COMPANY *v.* BACKUS, ET AL.

[No. 363, September Term, 1965.]

*Decided June 8, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-
HEIMER, BARNES and McWILLIAMS, JJ.

*William J. Rowan, III,* with whom were *Robert C. Heeney*
and *Heeney, McAuliffe & McAuliffe* on the brief, for appel-
lant.

*Arthur V. Butler,* with whom were *Butler & Gorman* and
*Edward J. Gorman, Jr.* on the brief, for appellees.

124

BARNES, J., delivered the opinion of the Court.

United States Fidelity and Guaranty Company (USF&G), the appellant, filed a petition under the Uniform Declaratory Judgment Act, Code (1957), Article 31A, in the Circuit Court for Montgomery County against the appellees seeking a declaration that Phoenix Assurance Company of New York (Phoenix) had the obligation to defend and pay all sums which James L. McVicker and Eugene B. Gingell, trading as Rockville Crane Rental Company (Rockville Crane), should become legally obligated to pay as damages. Judge Shure denied the declaratory relief sought by USF&G.

The facts are not in dispute. USF&G, a casualty insurance company, insured Rockville Crane for personal injury liability resulting from the operation of certain equipment owned by Rockville Crane. Phoenix, also a casualty insurance company, insured Maloney Concrete Company (Maloney Concrete) under an automobile liability policy in which Phoenix agreed to insure Maloney Concrete and all other persons within the meaning of the word "insured", as defined in the policy, against losses for liability for injuries to persons arising out of the use of the trucks of Maloney Concrete and also agreed in the policy to defend all actions against the persons insured by the policy. Coverage A of the policy under the heading of "Insuring Agreements", recites:

"I   COVERAGE A—BODILY INJURY LIABILITY
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile."

Under III, Definition of Insured, the policy provides:

"The unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use

thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. The insurance with respect to any person or organization other than the named insured does not apply."

Under the heading "Conditions" and the subheading "Purposes of Use Defined" appears the following:

"(c) Use of an automobile includes the loading and unloading thereof."

On December 20, 1962 James Backus, an employee of a subcontractor on the construction job was injured at a construction project in Montgomery County when a bucket of concrete being lifted by Rockville Crane fell and struck a steel bar which then caused injury to Mr. Backus. Maloney Concrete had contracted to sell mixed concrete and deliver it to the job site. In the course of that contract, mixed concrete was poured by the truck driver into the crane bucket and the bucket was filled. This bucket was attached to the crane, operated by Rockville Crane, by a cable which had a hook at its end without any safety catch and was then lifted up to the building under construction. The crane operator "jiggled" the bucket off the hook to which it was attached, the bucket filled with concrete fell, struck a steel beam on the ground, which in turn injured Mr. Backus.

USF&G on behalf of Rockville Crane obtained a general release from Mr. Backus for $1,133.23 and in May, 1964 filed the declaratory judgment action. In July 1964, Backus sued Rockville Crane for damages allegedly sustained. In May 1965, the lower court declared that Phoenix had no obligation to defend the action or pay any damages, and this appeal followed.

The dispositive question in the case is whether or not Rockville Crane and its crane operator were "using" the Maloney Concrete truck within the meaning of the "loading and unloading" clause of the Phoenix automobile liability policy covering that truck.

The meaning and application of the "loading and unloading" clause involved in this case has been the subject of many decisions, which, generally speaking, have followed two different theories in regard to the scope of "unloading." They are as follows: 1) the *"coming to rest doctrine"* (the minority rule) which interprets the "unloading" clause to comprise only the actual removing or lifting of the article from the motor vehicle up to the moment when (a) the goods which had been taken off the motor vehicle actually came to rest, and (b) every connection of the motor vehicle with the process of unloading had ceased; and 2) the *"complete operation doctrine"* (the majority rule) which interprets the "loading and unloading" clause to cover the entire process involved in the movement of goods from the moment they are given into the possession of the insured until they are turned over at the place of destination to the person to whom delivery is to be made, and the facts in each case must establish a sufficient causal relationship between the actions necessary to load or unload the motor vehicle and the accident for which recovery is sought.

The two doctrines and many of the cases applying them are carefully considered in *Pacific Automobile Insurance Company v. Commercial Casualty Insurance Company of New York*, 108 Utah 500, 161 P. 2d 423, 160 A.L.R. 1251 (1945) and in the helpful Annotation in the American Law Reports entitled *Risks within "loading and unloading" clause of automobile liability insurance policy*, 95 A.L.R.2d 1122. See Risjord, "Loading and Unloading", 13 Vanderbilt Law Review 903 (1960) and Henry B. Suter, "Loading and Unloading", 31 Insurance Counsel Journal 112 (1964). See also *Raffel v. Travelers Indemnity Co.*, 141 Conn. 389, 106 A. 2d 716 (1954).

We have not heretofore had occasion to pass upon this interesting question. Chief Judge Thomsen of the United States District Court for the District of Maryland in *American Auto. Ins. Co. v. Master Bldg. Supply & Lbr. Co.*, 179 F. Supp. 699 (1959), a case involving this question, indicated that in his opinion, "the 'complete operation' rule would be applied by the Maryland courts in such a case as this."

We do not find it necessary to decide in this case which of the two doctrines should be applied in Maryland as we have

concluded that under either doctrine, Phoenix would not be required to defend and pay any damages recovered in the Backus action.

It seems clear that under the "coming to rest" doctrine, the cement "came to rest" when it was deposited in the bucket provided by the purchaser at the job site. See *Stammer v. Kitzmiller*, 226 Wis. 348, 276 N. W. 629 (1937) ; *American Casualty Co. v. Fisher*, 195 Ga. 136, 23 S. E. 2d 395 (1942) ; *St. Paul-Mercury Indemnity Co. v. Standard Accident Ins. Co.*, 216 Minn. 103, 11 N. W. 2d 794 (1943).

Assuming, without deciding, that the "complete operation" doctrine applies, we are of the opinion that under the facts of this case, the delivery of the particular concrete was completed when it was delivered "at the site" by being placed in the bucket and there was no causal connection between the unloading by the truck operator and the accident which allegedly resulted in injuries to Mr. Backus.

In the case at bar, the contract between the purchaser of the mixed concrete and Maloney Concrete in regard to delivery was clear and unambiguous. It was to be delivered "at the job site," and was not to be delivered "in place." The contract in regard to delivery was fully performed when the truck operator placed the concrete in the bucket provided by the purchaser "at the site" to receive it. After the bucket was filled, possession passed to the crane operator who then had full and complete control over it. The crane operator was acting under instructions of the general contractor, as purchaser, in regard to when and how to place the concrete at various places on the construction. This was entirely unconnected with the Maloney Concrete truck and its operator. There is no suggestion that the truck operator negligently or improperly placed the concrete in the bucket or that the method of pouring the concrete into the bucket had anything to do with the subsequent fall of the bucket. On the contrary, the stipulated facts establish that the bucket fell because there was no safety catch on the cable to hold the bucket and that the bucket fell when the cable was "jiggled" by the crane operator. The truck operator had nothing whatever to do with the fall of the bucket and there is no causal relation established between the actions necessary to unload the truck and the acci-

dent for which recovery is sought. Under these circumstances, the "complete operation" doctrine, if applicable, would not impose liability under the "loading and unloading" clause in the insurance policy. See *Maryland Casualty Co. v. United Corp. of Mass.,* 35 F. Supp. 570 (D. Mass. 1940) ; *Zurich General Accident & Liability Ins. Co. v. American Mutual Liability Ins. Co.,* 118 N. J. Law 317, 192 Atl. 387 (1937) ; *Handley v. Oakley,* 10 Wash. 2d 396, 116 P. 2d 833 (1941) ; *Rogers v. Continental Casualty Co.,* 155 So. 2d 641 (Fla. App. 1963) ; *General Accident Fire & Life Assur. Corp. v. Brown,* 35 Ill. App. 2d 43, 181 N. E. 2d 191 (1962) ; and *Ferry v. Protective Indemnity Co.,* 155 Pa. Super. 266, 38 A. 2d 493 (1944).

The case at bar is to be distinguished from the *American Automobile Insurance Company* case *supra,* as in that case the truck operator carried sheetrock to the place in the dwelling as directed by the owner, and there was no evidence showing that thereafter and until the time the sheetrock fell, it had been touched by anyone. Judge Thomsen recognized that the facts in the case must ultimately establish a causal connection between the use and unloading of the motor vehicle and the injuries inflicted but that issue would be subsequently resolved in the state court action. In the case at bar, however, the stipulated facts establish that there was no causal relationship between the use and unloading of the vehicle and the injuries inflicted.

We are not unmindful that our decision is apparently contrary to those reached by the majority of the Court in *Lamberti v. Anaco Equipment Co.,* 16 A. D. 2d 121, 226 N. Y. S. 2d 70 (1962) ; by the Court in *Travelers Insurance Co. v. W. F. Saunders & Sons, Inc.,* 18 A. D. 2d 126, 238 N. Y. S. 2d 495 (1963) ; and by the Supreme Court of Texas in *Travelers Ins. Co. v. Employers Casualty Co.,* 380 S. W. 2d 610 (Tex. 1964), and by the majority of the Court in *St. Paul Mercury Insurance Co. v. Huitt,* 336 F. 2d 37 (6th Cir. 1964). Although the decisions in those cases can perhaps be distinguished from the case at bar upon the precise terms of the contract in this case for the delivery of the concrete, we are of the opinion that even upon the facts in those cases, the courts have expanded the application of the "loading and unloading" clause beyond what we consider was the intention of the parties to the insur-

ance policies involved in those cases and—with great respect—we decline to follow them.

The opinions of the courts in the four cases mentioned have, in our opinion, overlooked the basic coverage provided for in the policy which was to provide for payment of sums which the *insured* must pay "caused by accident and arising out of the ownership, maintenance or use of any automobile." The term "insured" includes any person "while *using* an owned or a hired automobile and any person or organization legally responsible for the use thereof, provided the *actual use* of the automobile is *by the named insured or with his permission * * *.*" This means that where the injury is caused by a third person who is not connected with the truck and who has no legal relationship with the named insured and who under usual circumstances would not be using the truck of the named insured, it must be established before the coverage of the policy becomes applicable, that such a third party was in the *actual use* of the truck at the time of the injury, either with the *express* or the *implied* permission of the named insured. The "loading and unloading" clause broadens the meaning of the word "use", but to have coverage under the policy it must be proved that the third person causing the injury was in the actual use of the truck with the express or implied permission of the named insured. This is clearly pointed out by the Supreme Court of Ohio (which follows the "complete operation" doctrine) in *Travelers Insurance Co. v. Buckeye Union Casualty Co.*, 172 Ohio St. 507, 178 N. E. 2d 792, 95 A.L.R.2d 1114 (1961). Circuit Judge McAllister in his dissenting opinion in *St. Paul Mercury Insurance Co. v. Huitt, supra* (he was the only judge of the Court of Appeals for the Sixth Circuit who sat in the *Huitt* case) cited the *Buckeye Union Casualty Co.* case with approval and was of the opinion that the decision in that case should have been followed in the *Huitt* case.

A recent case, almost exactly in point on the facts with the case at bar and which supports our decision in this case, is *San Fernando Valley Crane Service, Inc. v. Travelers Insurance Co.*, 229 Cal. App. 2d 229, 40 Cal. Rptr. 165 (1964), petition for hearing denied by the Supreme Court of California (10-15-64). California by prior decisions follows the "complete

operation" doctrine. Mr. Justice Ford, speaking for a unanimous court, in *San Fernando,* stated:

"[I]t cannot be reasonably said that such expansion of the meaning of the term 'the use of' the motor vehicle is without limitation. In determining the scope of the coverage afforded, consideration must be given to the intention of the parties to the contract of insurance. It is not reasonable to conclude that such parties intended an extension of coverage to an accident occurring after concrete has been placed in a receptacle furnished by or on behalf of the purchaser and while it is being mechanically conveyed to a location some distance above the ground. This is so whether the place of ultimate use be many stories above the ground or whether the form in which the concrete is to be poured is at an elevation such as that involved in the present case." (page 236 of 229 C. A. 2d; page 170 of 40 Cal. Rptr.)

After noting the contrary views expressed in *Lamberti, W. F. Saunders & Sons, Inc.,* and *Huitt,* all *supra,* Mr. Justice Ford stated:

"But the more cogent reasoning leads to the conclusion that when Consolidated, [the company supplying the mixed concrete], as it had contracted to do, brought the concrete to the job site and deposited it in the receptacle provided by or on behalf of the purchaser, the truck was then unloaded insofar as the concrete so deposited was concerned. At that time that concrete had been placed in the hands of the receiver at the designated reception point." (pages 236-237 of 229 C. A. 2d; page 170 of 40 Cal. Rptr.)

We are of the opinion that the better reasoning is found in the *Buckeye Union Casualty Company* and *San Fernando Valley Crane Service* cases and that we should follow the reasoning of those cases.

In view of our decision upon the principal question presented,

it is unnecessary for us to pass upon whether or not Phoenix was the primary insurer.

*Judgment affirmed, the appellant to pay the costs.*