260 So.2d 249 (1972)
GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, Limited, a Foreign Corporation, et al., Appellants,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Etc., et al., Appellees.
No. 71-444.
District Court of Appeal of Florida, Fourth District.
March 29, 1972.
*250 Dieter K. Gunther, of Carey, Dwyer, Austin, Cole & Selwood, Fort Lauderdale, for appellants.
John W. Thornton, of Stephens, Magill & Thornton, Miami, for appellee.
JOHNSON, CLARENCE T., Jr., Associate Judge.
This is an appeal from a summary judgment in a declaratory action seeking construction favorable to appellants of coverage afforded by operation of the "loading and unloading" clause of a motor vehicle liability policy. The case arose in the following manner:
(1) The Heinickes decided to construct an addition to their building. Without hiring a general contractor, they contracted directly with others to perform certain aspects of the job. Arnold Anderson, a building contractor, was hired to construct the shell. Rinker Materials Corporation was to furnish ready mixed concrete. On the date of the accident which precipitated this litigation, a Rinker truck delivered concrete to the job site and emptied part of its load into a large bucket of a crane owned by Heinicke and operated by an employee of Heinicke. In attempting to transport the bucket to the top of the building so the concrete therein could be poured in a tie-beam, the crane knocked McCarty, an employee of Anderson, off a wall and injured him.
(2) McCarty and his subrogated workman's compensation carrier successfully sued the Heinickes for McCarty's injuries. That judgment was affirmed on appeal to this court. Heinicke v. McCarty, Fla.App. 1968, 213 So.2d 475.
(3) General Accident Fire and Life Assurance Corporation (hereinafter called GAC), the liability carrier on the Heinicke crane, brought this declaratory action, seeking to impose the burden of the McCarty judgment on Liberty Mutual Insurance Company (hereinafter called Liberty), liability carrier on the Rinker truck. The theory of the GAC action is that Heinicke, as crane owner, became an omnibus insured under the Liberty policy via the operation of the "loading and unloading" clause of that policy, since at the time of McCarty's injury the concrete had not reached its ultimate place of use, i.e., the tie-beam into which it was to be poured.
The facts not being in dispute, the court below disposed of this action by summary judgment in favor of Liberty, thereby holding that McCarty's injury did not, within the purview of the Liberty policy, arise out of the unloading of the Rinker truck.
We affirm.
The Liberty policy we are concerned with here provided:
"Coverage A
BODILY INJURY LIABILITY To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including *251 death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile."
* * * * * *
"DEFINITION OF INSURED With respect to the insured for bodily injury liability and for property damage liability the unqualified word `insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission... ."
* * * * * *
"POLICY PERIOD, TERRITORY, PURPOSES OF USE ...
(c) Use of an automobile includes the loading and unloading thereof."
The "loading and unloading" provision is designed to extend the coverage afforded by a policy by expanding the definition of "use" of the insured vehicle. It has been the source of considerable litigation. See, e.g., 160 A.L.R. 1259; 95 A.L.R.2d 1122; Risjord, Loading and Unloading, 13 Vanderbilt Law Rev. 903; Sutter, Loading and Unloading, 31 Insurance Counsel Journal 112; Brown and Risjord, Loading and Unloading: The Conflict Between Fortuitous Adversaries, 29 Insurance Counsel Journal 197.
In construing coverage afforded through the operation of the "loading and unloading" clause, courts have generally placed their decisions within one of two doctrines: The "coming to rest" doctrine or the "complete operation" doctrine:
(a) "Coming to Rest" Under this doctrine, "unloading" comprises the actual removing or lifting of the article from the motor vehicle up to the moment when the goods which are taken off the vehicle actually come to rest. This is the minority, and apparently passing, view.
(b) "Complete Operation" Although there is no uniformity of definition of this doctrine, the "loading and unloading" clause is generally held to cover the entire process involved in the movement of the goods from the moment when they are given into the insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made. This is the majority view.
Both doctrines require that a causal relationship exist between an accident or injury and the loading and unloading (use) of a vehicle in order for the accident or injury to come within the meaning of the "loading and unloading" clause, and where such causal relationship is absent, coverage is usually denied. 95 A.L.R.2d 1125.
While these doctrinal definitions seem simple enough on their face, the decisions in those jurisdictions applying the "complete operation" doctrine are marked by divergence. Several jurisdictions have broadened the doctrine by extending the unloading limit to the ultimate destination or ultimate place of use of the material without regard to the fact that the deliverer had finished his handling of it and had turned it over to the consignee at the job site prior to the injury. See e.g. Lamberti v. Anaco Equipment Corp., 16 A.D.2d 121, 226 N.Y.S.2d 70 (1962); Travelers Insurance Co. v. W.F. Saunders & Sons, Inc., 18 A.D.2d 126, 238 N.Y.S.2d 495 (1963); Travelers Insurance Co. v. Employers Casualty Co., Tex. 1964, 380 S.W.2d 610; St. Paul Mercury Insurance Company v. Huitt, 6 Cir.1964, 336 F.2d 37. It is within this extension that GAC would have us place Florida.
It should be noted at the outset that we are not faced here with an accident occurring while materials being removed from a vehicle are in continuous movement without having come to rest outside the vehicle. In that situation coverage would apply regardless of which doctrine is adopted, provided the requisite causal relationship existed *252 between the accident and the use of the vehicle.
It is equally clear that the coverage sought here by GAC would not be available if the "coming to rest" doctrine were applied, since the concrete from the truck had admittedly come to rest in the crane bucket sitting on the ground outside the truck, prior to the injury.
At least one court, on facts similar to these, has declined to attach a doctrinal label, since it found unloading was completed under either doctrine when the concrete was deposited in a crane bucket provided by the consignee at the job site. See United States Fidelity & Guaranty Co. v. Backus, 1966, 243 Md. 121, 220 A.2d 139.
While Florida has not taken a specific position on the doctrine, if any, it would follow, some guidelines do exist. Rogers v. Continental Casualty Company, Fla. App. 1963, 155 So.2d 641, involved a crane loading barges from a lake onto trucks. As a truck was loaded and pulled away, another would soon take its place. After loading one truck, and before another truck had pulled into position, the crane swung out over a lake to pick up another barge. During this swing, an employee of the crane owner was injured. In a declaratory action seeking a policy interpretation, the Second District Court of Appeal held that the policy on the truck was not expanded to make the crane operator an additional insured by operation of the "loading and unloading clause". The court quoted from the annotation at 160 A.L.R. 1259:
"... [T]he intention of the parties is the controlling factor, that the terms `loading and unloading' are to be taken in their plain and ordinary sense, and that the policy of insurance is to be construed as a whole."
And from page 1261:
"An accident is causally connected with the process of loading or unloading within the meaning of the clause if the loading or unloading was its efficient and predominating cause."
Rogers, supra, found that the facts of that case fit into neither the "coming to rest" doctrine or the "complete operation" doctrine, but quoted with approval from Travelers Ins. Co. v. Buckeye Union Casualty Co., 1961, 172 Ohio St. 507, 178 N.E.2d 792:
"But where, as here, the injury is caused by a third party who is not connected with the truck, who has no legal relationship to the named insured, and who under normal circumstances would not be using the truck of the named insured, it must first appear before the liability provisions of the policy become applicable, that such third party was in the actual use of the truck at the time of the injury, with the express or implied permission of the named insured."
The words "loading and unloading" do not operate in a vacuum. While the "loading and unloading" clause is an important part of this policy, a single policy provision should not be construed in isolation. The Praetorians v. Fisher, Fla. 1956, 89 So.2d 329. Instead, the policy must be construed according to the entirety of its terms and conditions. Section 627.0118, Florida Statutes, F.S.A.
Coverage under the Rinker policy requires that the injury arise out of the "ownership, maintenance or use" of the truck by an "insured". An "insured" is the named insured (Rinker) or any other person while "using" the truck, provided the "actual use" of the truck is either by Rinker or with Rinker's permission. There is no claim here that the crane operator was "actually using" the truck with Rinker's permission, or even that the truck itself was being "actually used" at all. Instead the claim is that the word "unloading" carries with it all the necessary legal connotations to satisfy the "use" requirements of the policy, so coverage necessarily follows when it is shown that the injury *253 occurred before the material has reached its ultimate place of use.
A court cannot, under the guise of construction, make a new contract for the parties. Haenal v. United States Fidelity & Guaranty Co., Fla. 1956, 88 So.2d 888. The terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties  not a strained, forced or unrealistic construction. A number of jurisdictions have taken just this approach in construing the policy provisions involved here:
In San Fernando Valley Crane Service v. Travelers Ins. Co., 1964, 229 Cal. App.2d 229, 40 Cal. Rptr. 165, at page 170, a case factually close to the instant case, the court stated:
"It is true that the `loading and unloading' provision in the Travelers policy issued to Consolidated is one of extension. (See American Auto. Ins. Co. v. American Fid. & Cas. Co., supra, 106 Cal. App.2d 630, 635, 235 P.2d 645). But it cannot be reasonably said that such expansion of the meaning of the term `the use of' the motor vehicle is without limitation. In determining the scope of the coverage afforded, consideration must be given to the intention of the parties to the contract of insurance. It is not reasonable to conclude that such parties intended an extension of coverage to an accident occurring after concrete has been placed in a receptacle furnished by or on behalf of the purchaser and while it is being mechanically conveyed to a location some distance above the ground. This is so whether the place of ultimate use be many stories above the ground or whether the form in which the concrete is to be poured is at an elevation such as that involved in the present case."
The Supreme Court of California, in Entz v. Fidelity & Casualty Company of New York, 1966, 64 Cal.2d 379, 50 Cal. Rptr. 190 at page 193, 412 P.2d 382 at page 385, another ready-mix concrete case involving similar facts, said:
"Where a policy provides for coverage during the loading or unloading of a vehicle, the terms `loading' and `unloading' must be given their plain and ordinary meaning... ."
* * * * * *
"Although some courts following the `complete operations' rule have held that `unloading' is not complete until the material has been delivered to the place where it is to be used by the consignee ... it would appear more reasonable to hold that `unloading' has been completed when, following removal of the material from the vehicle, the deliveror has finished his handling of it, and it has been placed in the hands of the receiver at the designated reception point, even though it is necessary for the consignee, or someone on his behalf, to transport it thereafter to another point."
* * * * * *
"Under the circumstances, it would seem that when Teichert brought the concrete to the job site and deposited it on the ground where directed by Mr. Pruitt, Mr. Pruitt determining where and how to transport it further, `the truck was then unloaded insofar as the concrete so deposited was concerned. At that time that concrete had been placed in the hands of the receiver at the designated reception point ...'"
In Fireman's Fund Ins. Co. v. New Zealand Ins. Co., 1968, 103 Ariz. 260, 439 P.2d 1020, a ready-mix concrete truck had filled the crane bucket and the crane started to move the bucket to the forms where it was to be emptied. The crane hit a high tension wire and caused an employee who was guiding the bucket to be electrocuted. The Supreme Court of Arizona approved the "complete operation" rule as fixed by Entz, supra, and said:
"... [L]iability must be ascertained from the language used in the *254 policy, it being the cardinal principle of construction that the intention of the parties as derived from the language must prevail... ."
* * * * * *
"We conclude that the concrete was received from Valley Redi-Mix by its consignee Schnaufer through its employee Follet at the place of designation, a steel bucket at the east side of the building. The Valley Redi-Mix truck was unloaded within the meaning of the New Zealand policy when the concrete was poured down through the chute into the bucket, and it was thereafter in possession of and being transported by the Follet crane, an agency of the consignee. We hold that the accident occurred after the concrete was unloaded."
In United States Fidelity & G. Co. v. Hartford Acc. & I. Co., 1969, 209 Va. 552, 165 S.E.2d 404, a ready-mix concrete truck had filled a crane bucket at the job site and the crane had started to raise the bucket to forms on the bridge, when a cable broke on the crane, causing the bucket to fall, killing the truck driver. The Supreme Court of Appeals of Virginia, in determining that the accident did not occur during "unloading", reiterated its support of the "complete operation" doctrine, and said:
"... The rationale of the `complete-operation' doctrine ... is that the facts of each case must establish a causal relationship between the `use' and the `unloading' of the vehicle and the injuries inflicted... .
"The causal connection between `use' and `unloading' of the vehicle, and the movement of the goods therefrom, is broken when the consignee or purchaser takes full and exclusive possession and control of goods after they leave the truck. The unloading coverage continues until delivery is effected, or until the goods are moved to the place where the employees of the insured turn them over to the party to whom they are to make delivery."
* * * * * *
"The fact that at the time of the accident the ready-mix truck had not been completely emptied is immaterial. As to the concrete that was poured or emptied into the bucket attached to a crane, the unloading of that concrete was completed. Delivery to Warsing had been made and Thompson and Kelly had no further responsibility with reference to it.
"We conclude that the Thompson ready-mix truck was unloaded within the meaning of the Hartford policy when the concrete was poured down through the chute into the bucket, and it was thereafter in possession of, and being transported by the Warsing crane. Accordingly, we concur in the holding of the trial judge that the accident resulting in Kelly's death occurred after the concrete was unloaded and did not arise out of the use of the Thompson ready-mix truck."
The primary purpose of the Heinicke crane was to expedite the lifting of the delivered concrete to a point on the building where Anderson, in constructing the shell, would, in his discretion, use it. This function was more directly related to the construction of the building than to the unloading of the truck. When the Rinker employee filled the grounded crane bucket with concrete from the truck, the delivery was complete as to that concrete in the bucket. Possession and control of the crane, the bucket and the concrete, was then exclusively in the Heinicke crane operator. Rinker could not and did not direct the movement of the concrete by the crane. Rinker could not and did not decide its destination or place of ultimate use. It cannot reasonably be said that the injury to McCarty arose out of the "use" of the Rinker truck. The "use" of the truck, within the purview of the Liberty policy, was neither an efficient and predominating cause or a substantial factor in the injury to McCarty. Rogers v. Continental Casualty Company, supra.
*255 We believe the conclusions reached by the California, Arizona and Virginia courts cited above, more nearly comport with our mandate to construe the policy provisions in their ordinary sense, giving to them a reasonable and practical interpretation, consistent with an unstrained presumption as to the intention of the parties.
Feeling that the "complete operation" doctrine, without illogical extension, should apply in Florida, we hold that "unloading" as that term is used in the policy before us, has been completed, when, following removal of the material from the vehicle, the deliverer has finished his handling of it and has placed the material in the hands of the receiver at the designated reception point, even though it is necessary for the consignee, or someone in his behalf, to transport it thereafter to another point. Entz v. Fidelity and Casualty Company of New York, supra.
Affirmed.
WALDEN and CROSS, JJ., concur.