413 So.2d 767 (1982)
UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant,
v.
Susan HELMS, As Personal Representative of the Estate of Lawrence Helms, Deceased; Conerec, Inc., a Florida Corporation; Stresscon International, Inc., a Florida Corporation; & Tripp Crane Service, Inc., a Florida Corporation, Appellees.
No. 80-273.
District Court of Appeal of Florida, Third District.
March 2, 1982.
Rehearing Denied May 18, 1982.
Horton, Perse & Ginsberg and Edward A. Perse, Peters, Pickle, Flynn, Niemoeller, Stieglitz & Downs, Miami, for appellant.
Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel D. Eaton, Spence, Payne, Masington & Grossman, Lane, Mitchell & Harris and C. Robert Murray, Jr., Miami, for appellees.
Before SCHWARTZ and NESBITT, JJ., and VANN, HAROLD R. (Ret.), Associate Judge.
NESBITT, Judge.
The main issue on appeal is whether the activities engaged in by the insured constituted unloading, for which coverage is excluded; or whether the insured's activity constituted erection and placement, for which there would be coverage. The trial court found for the insured and we affirm.
The judgment appealed from was rendered upon the stipulation of facts which, in part, provides:
This accident occurred on August 25, 1977 at approximately 9:40 A.M. It occurred at 9445 S.W. 24th Street which was the construction site of the Dade County West Regional Library. The decedent, Larry Helms, was on the jobsite working for The Dublin Company. CONEREC, INC., a Florida corporation, had a contract to erect concrete slabs which comprised a major construction element of the building. CONHAUL, INC., a Florida corporation, picked up the slabs *768 at the plant and delivered same to the jobsite. Approximately 15% of the slabs were "sunscreens" and such slabs had to have special rigging put on same so that the crane could insert them into the building. The remaining 85% of the slabs required no special rigging and could be inserted directly into the building.
On August 24, 1977, the day before the accident, the CONHAUL tractor-trailer came to the jobsite with a load of concrete slabs and went to the Northwest corner of the building. A Tripp crane was utilized along with CONEREC's employees to take the top slab from the truck by lifting it with nylon straps. The slab was a "sunscreen" slab and was placed on steel sawhorses where the special rigging was attached thereto. The straps were removed and the crane then used cables to lift the slab into the building.
The slab did not fit at the particular location and same was then replaced upon the steel sawhorses and the special rigging was removed. Thereafter, the nylon straps were utilized to lift the slab and place it back onto the trailer. The tractor and trailer were then driven to the Southwest corner of the building whereby the tractor was unhooked and left the jobsite.
On the following morning  8/25/77  this same slab was rigged again with the nylon straps with the intention of placing the slab again on the steel sawhorses for the special rigging and then inserting same in place on the Southwest side of the building. CONEREC's employees put the straps around the slab and the slab was lifted by the crane so that the slab had cleared the trailer. After checking the straps and the balance of the slab, the crane then lifted the slab up into the air and swung same in a counterclockwise motion, for a distance of 65-70 feet away from the trailer and at that point while the slab was over the building, the straps broke and the accident occurred. At the time the accident occurred, the slab was being moved to be placed on the steel sawhorses for the special rigging mentioned above.
CONEREC purchased a comprehensive general liability policy from United States Fidelity & Guaranty Company (USF&G) providing coverage up to $1,000,000. The same policy also afforded CONEREC $1,000,000 contractual liability coverage. The liability coverage contained an exclusion which states that no coverage is available for bodily injury or property damage arising from loading or unloading an automobile (which included a trailer or semitrailer). The contractual liability coverage contained no such exclusion.
USF&G was joined as an original party defendant by the original plaintiff and provided a defense in the wrongful death action. Prior to trial, however, USF&G raised the present coverage dispute which was then severed to abide the post-judgment proceedings. After the original judgment was affirmed here, Stresscon International, Inc. v. Helms, 390 So.2d 139 (Fla. 3d DCA 1980), Stresscon then commenced a cross-claim against CONEREC and USF&G on a third party beneficiary theory. Because the judgment appealed from found that both the contractual liability policy and the comprehensive general liability policy each separately afforded coverage, Stresscon is presently aligned with the survivors and the decedent's estate against USF&G.
We begin our analysis by observing that the burden was upon USF&G to demonstrate the applicability or existence of an exclusion of its general liability policy. Liberty Mutual Insurance Company v. Flitman, 234 So.2d 390 (Fla. 3d DCA 1970). While the term "unload" is simple, the application of the definition of the facts of the case creates a necessity for an interpretation or choice between two or more possible meanings. When an ambiguity such as this exists in an insurance policy, any uncertainty must be construed against the insurer and in favor of the insured. Drisdom v. Guarantee Trust Life Insurance Company, 371 So.2d 690 (Fla. 3d DCA 1979); Fidelity and Casualty Company of New York v. Garcia, 368 So.2d 1313 (Fla.3d DCA), cert. denied, 378 So.2d 344 (Fla. 1979).
*769 In light of these rules of construction and the stipulated facts, we find that the sunscreen in question had passed beyond the unloading process and that, at the time that it fell and killed plaintiff's decedent, the workmen involved were engaged in erecting it onto the building. If the sunscreen had been placed on the steel sawhorses, rigged, hoisted, and lifted toward the building but would not fit in place on numerous occasions (which would cause a reversal and rephasing of the same process), no one would seriously contest a finding that the sunscreen had passed beyond the "unloading" phase and actively entered into the construction phase so that any further movement or consequential "unloading" was merely incidental to the construction process. In this case, the trial court was well within its province in finding that after the first attempt was made but failed on the day prior to the accident, the particular sunscreen passed beyond the unloading stage and was well into the construction phase of the project. Clearly, after the sunscreen in question had been transported to the jobsite and was initially unloaded from the trailer and came to rest after having been placed upon the steel sawhorses for rigging, any further movement was only incidental to the construction process. See, General Accident Fire and Life Assurance Corporation v. Liberty Mutual Insurance Company, 260 So.2d 249 (Fla. 4th DCA 1972).
Consequently, we affirm the trial judge's decision that coverage exists under the comprehensive general liability policy written by USF&G. We do not find merit in the other issues on appeal.
Affirmed.
SCHWARTZ, J., dissents from denial of rehearing.
SCHWARTZ, Judge (dissenting in part).
I would reverse the determination that the liability coverage was available, because I believe that the rigging of the sunscreen was simply part of the process by which its "unloading" was being effected and that it makes no difference that a similar operation had aborted the previous day. Indemnity Insurance Co. of North America v. Old Dominion Hoisting Service, 251 F.2d 382 (D.C. Cir.1958); Donahue Construction Co. v. Transport Indemnity Co., 7 Cal. App.3d 291, 86 Cal. Rptr. 632 (1970); Colby v. Liberty Mutual Insurance Co., 220 Cal. App.2d 38, 33 Cal. Rptr. 538 (1963); Industrial Indemnity Co. v. General Insurance Co. of America, 210 Cal. App.2d 352, 26 Cal. Rptr. 568 (1962); Employers Mutual Liability Insurance Co. of Wisconsin v. Pacific Indemnity Co., 167 Cal. App.2d 369, 334 P.2d 658 (1959); Barrois v. Service Drayage Co., 250 So.2d 135 (La. App. 1971), cert. denied, 259 La. 806, 253 So.2d 66 (1971); Cinq-Mars v. Travelers Insurance Co., 100 R.I. 603, 218 A.2d 467 (1966); see, State ex rel. Butte Brewing Co. v. District Court of Second Judicial District, 110 Mont. 250, 100 P.2d 932 (1940); Hardware Mutual Casualty Co. v. St. Paul Mercury Indemnity Co., 264 Wis. 230, 58 N.W.2d 646 (1953); c.f., General Accident Fire & Life Assurance Corp. v. Liberty Mutual Insurance Co., 260 So.2d 249 (Fla. 4th DCA 1972); see generally, Annot.  Risks Within "Loading and Unloading" Clause of Motor Vehicle Liability Insurance Policy, 6 A.L.R. 4th 686 (1981).
I agree to affirmance as to the contractual liability coverage.

ON REHEARING
In its motion for rehearing, appellant brings to light some language which tends to create confusion as to this court's decision. For purposes of clarification, the sentence preceding the citation to General Accident Fire and Life Assurance Corporation v. Liberty Mutual Insurance Company, 260 So.2d 249 (Fla. 4th DCA 1972) is replaced by the following:
We need not consider the "coming to rest" doctrine and the "completed operations" doctrine, see General Accident Fire and Life Assurance Corporation v. Liberty Mutual Insurance Company, 260 So.2d 249 (Fla. 4th DCA 1972), because it is clear in the present case, that unloading was completed under either test, after the sunscreen was transported to the jobsite, and initially removed from the trailer. *770 Any further movement was incidental to the construction phase.
In all other respects, the motion for rehearing is denied.