DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**UNITED AUTOMOBILE INSURANCE COMPANY,**
Appellant,

v.

**ISO-DIAGNOSTICS TESTING, INC.,**
a/a/o **SURYMA PINEIRO MORALES,**
Appellee.

No. 4D2022-1735

[January 10, 2024]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Kathleen McHugh, Judge; L.T. Case No. COCE21029623.

Francesca M. Stein and Lissette Gonzalez of Cole, Scott & Kissane, P.A., Miami, and Michael J. Neimand, House Counsel of United Automobile Insurance Company, Miami, for appellant.

Mac S. Phillips of Phillips Tadros, P.A., Fort Lauderdale, for appellee.

KLINGENSMITH, C.J.

In a dispute over PIP benefits, United Automobile Insurance Company ("United") appeals the trial court's order granting final summary judgment in favor of ISO-Diagnostics Testing, Inc. ("ISO"). For the reasons discussed herein, we reverse and remand.

This dispute began when the insured sought treatment from ISO following a car accident and assigned his PIP benefits to ISO for payment. United's automobile insurance policy with the insured required United to pay based on the applicable fee schedule "in effect on March 1 of the year in which the services" were rendered. The policy required United to "pay in accordance with the No-Fault Act, *as amended*, to or for the benefit of the named insured . . . ." (emphasis added). The policy defined the No-Fault Act as "the Florida Motor Vehicle No-Fault Law, *as the same may be amended from time to time*, and the provisions of said Act are hereby incorporated by reference and included herein." (emphasis added). Further, under "Charges for Treatment of Injured Persons," the policy

noted: "Pursuant to section 627.736(5)(a)1., Florida Statutes, *as amended*, we will limit reimbursement under the personal injury protection (PIP) section of 'your' insurance policy to 80 percent of the following schedule of maximum charges . . . ."  (emphasis added).

After ISO submitted its bill, United issued a payout of $784.19 based on the 2016 fee schedule.  Believing United should have paid according to the 2017 fee schedule, ISO filed suit to recover the difference.  The parties agreed the facts were not in dispute, and only questions of law remained.

ISO moved for summary judgment, arguing the term "year" in the policy applied to a calendar year, not a service year.  ISO relied on when the policy was written, arguing that United's failure to modify its policy language after the PIP statute was altered in 2015 meant the unambiguous definition of the word "year" controlled.  Thus, ISO maintained that United should have paid according to the 2017 fee schedule.  United separately moved for summary judgment and argued the policy "unambiguously provides that the claimant's medical bills will be paid at the permissive reimbursement methodology contained in F.S. § 627.736 in accordance with the No-Fault Statute."

The trial court entered final summary judgment in favor of ISO.  The trial court found the plain meaning of the word "year" controlled and that United should have paid according to the 2017 schedule because the accident and payment request were made within the 2017 calendar year.  This appeal followed.  The standard of review for an entry of summary judgment is *de novo.  Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

Here, the controversy centers on whether the term "year" as referenced in the policy referred to a service year or a calendar year.  When interpreting an insurance policy where the language is "plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." *Ducksbury v. Progressive Express Ins. Co.*, 211 So. 3d 73, 75 (Fla. 4th DCA 2017) (quoting *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013)).  Here, the trial court erred in finding the term "year" referred to a calendar year and not a service year, because section 627.736 and the policy at issue are clear in their meaning.  Before 2015, section 627.736 did not define "year" and simply stated, "the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the *year* in which the services, supplies, or care is rendered . . . ."  § 627.736(5)(a)2., Fla. Stat. (2013) (emphasis added).  However, in 2015, the statute was amended to change "year" to

"service year," and defined "service year" as "the period from March 1 through the end of February of the following year." § 627.736(5)(a)2., Fla. Stat. (2015).

At the time of the accident in February 2017, section 627.736 dictated the use of a service year, not a calendar year, and controlled which fee schedule United was required to utilize. Because the accident occurred before March 1, 2017, United correctly paid ISO based on the 2016 fee schedule as provided under the then-current statute. The policy at issue notes several times that the statute applies *as amended* and is thus incorporated into the policy "*as amended*," clearly indicating an expectation by the insurer that the statute could change and obviating any need to continually update the policy language to reflect any periodic statutory changes after the policy was executed. Thus, the statute would apply to insurer payouts at the time when the payout was made. In the instant case, the expectation was clear that the post-amendment statute in effect at the time of the payouts would apply to the instant claim.

To illustrate this point, we note that the pre-amendment statute's reference to the fee schedule effective date (March 1) shows the legislature's intent to use a service year as the controlling timeframe. If the legislature had intended to define a "year" as a calendar year, it would have made January 1 the reference date. The inclusion of "March 1" signifies using a service year as the anchor for the required payouts because a service year would run from the beginning of March to the end of February the following year. Considering the fee schedules for the applicable year are published every November,[1] the "March 1" date shows no other connotation than to help denote that a service year controls which fee schedule an insurer should use under the policy. In doing so, the policy's incorporation of the statute was sufficient because it informed ISO that United would pay out claims based on the fee schedule as dictated by the No-Fault Law at the time of the payout. Applying a calendar year to the payouts under the policy would lead to a "strained, forced or unrealistic construction" of the policy. *See Ducksbury*, 211 So. 3d at 75 (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249, 253 (Fla. 4th DCA 1972)).

---

[1] *See* 42 U.S.C. § 1395W-4(b)(1) ("Before November 1 of the preceding year, for each year beginning with 1998, subject to subsection (p), the Secretary shall establish, by regulation, fee schedules that establish payment amounts for all physicians' services furnished in all fee schedule areas (as defined in subsection (j)(2)) for the year.").

Therefore, under the plain meaning of the policy and the statute, whether pre- or post-amendment, the definition of a "year" meant a service year governing the payout at issue. As such, we reverse the trial court's final summary judgment in favor of ISO, and remand for entry of final summary judgment in favor of United in accordance with this opinion.

*Reversed and remanded.*

KUNTZ and ARTAU, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***