439 P.2d 1020

**FIREMAN'S FUND INSURANCE COMPA-
NY, a corporation, Appellant,**

v.

**NEW ZEALAND INSURANCE COMPANY,
Limited, a corporation, Appellee.**

No. 8601.

Supreme Court of Arizona,
In Division.

April 17, 1968.

Moore, Romley, Kaplan, Robbins & Green, Phoenix, for appellant.

Snell & Wilmer, Phoenix, for appellee.

STRUCKMEYER, Justice.

This action was brought by Fireman's Fund Insurance Company, a corporation, against New Zealand Insurance Company, Ltd., a corporation, to recover the sum of $20,675 expended in defense and settlement of a wrongful death action. The action was determined in the court below on an agreed statement of facts. From an adverse judgment in favor of New Zealand, this appeal was taken.

The statement of facts discloses that the Schnaufer Construction Company, a corporation, was the general contractor for the construction of a warehouse. Schnaufer engaged the Valley Redi-Mix Company, a corporation, to deliver premixed concrete in mobile mixer trucks. Delivery was to be made to the east side of the new building where the concrete was to be emptied from the trucks into a steel bucket. Public lia-

bility insurance on the Valley Redi-Mix trucks was carried with New Zealand. Schnaufer further "employed" Richard J. Follet, doing business as Sloane's Transfer & Storage Company, to transport the concrete in the steel bucket by means of a mobile crane for use in the forms on the second floor. Public liability insurance on the mobile crane was carried with Fireman's Fund.

The Valley Redi-Mix trucks were equipped with chutes down through which the concrete was poured from the trucks into the steel bucket. The steel bucket was then lifted by the crane operated by an employee of Follet and moved to the forms where it was emptied. Louis C. Harmon, who was directly employed by Schnaufer, had the responsibility of guiding the bucket. While he was attempting to guide the bucket on November 1, 1957, the crane's operator allowed its boom to make contact with a high-tension wire and Harmon suffered injuries by electrocution from which he subsequently died. Fireman's Fund defended the suit for wrongful death brought by Harmon's widow and then brought this action to recover the amount expended in the defense and settlement of the case.

The sole issue is whether the New Zealand policy which covered the use of the Redi-Mix truck also covered the transportation of the cement by the crane until it reached the forms.

As a generality, the cases agree that liability must be ascertained from the language used in the policy, it being the cardinal principle of construction that the intention of the parties as derived from the language must prevail. This is, of course, the accepted rule in Arizona. Dairyland Mutual Insurance Co. v. Andersen, 102 Ariz. 515, 433 P.2d 963; D.M.A. F.B. Federal Credit Union v. Employers Mutual Liability Insurance Co., 96 Ariz. 399, 396 P.2d 20.

The New Zealand policy provided:

"1. COVERAGE A—BODILY INJURY LIABILITY — AUTOMOBILE: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, * * * including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.

\* \* \* \* \* \*

"CONDITIONS

\* \* \* \* \* \*

"3(e) USE. Use of an automobile includes the loading and unloading thereof."

It is apparent that the basic purpose of the policy was to protect Valley Redi-Mix against damages which it might become obligated to pay because of accident arising out of the use of the vehicle.

It is urged that under similar clauses the word "unloading" has been given two interpretations, viz., what is known as the "coming to rest" rule and the "complete operation" rule. Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 109 N.E.2d 592 (1952), a loading case, discusses the two rules.

"The narrower construction, adopted in some states, insists upon a close connection between the vehicle and the acts for which coverage is claimed. 'Loading' is interpreted by the courts of those jurisdictions as including only the immediate act of placing the goods upon the vehicle,—excluding the preliminary acts of bringing the goods to the vehicle; and 'unloading' is taken to embrace only the operation of removing the goods from the vehicle to a place of rest. [Citations.] The broader construction, adopted in a majority of the jurisdictions which have passed upon the question, is that 'loading and unloading' embrace, not only the immediate transference of the goods to or from the vehicle, but the 'complete operation' of transporting the goods between the vehicle and the place from or to which they are being delivered." 109 N.E.2d at 594.

And see annotation 95 A.L.R.2d 1122 and articles and law reviews cited at p. 1124.

Under New York's definition, the "complete operation" of transporting the goods ends at the place "to which they are being delivered." With this we have no quarrel if by "the place to which they are being delivered" means the place the parties have agreed that possession of the goods will be accepted from the consignor and does not mean the final destination after all transit is exhausted.

Thereafter, the Supreme Court of New York, Appellate Division, in Lamberti v. Anaco Equipment Corp., 16 A.D.2d 121, 226 N.Y.S.2d 70 (1962), found liability as against the insurer of a transit-mix concrete truck where, at the job site, the concrete was poured from the truck into a bucket of a crane. The bucket tipped and some concrete was dropped and struck the driver of the truck. The Court concluded that the accident came within the meaning of the word "unloading" as that term was construed in Wagman v. American Fidelity & Casualty Co., supra, saying:

> "The bucket cannot be considered 'the place * * * to which' the concrete was being delivered. It was merely the necessary conduit by which the concrete was conveyed to its place of delivery." 226 N.Y.S.2d 70, 73.

Lamberti v. Anaco Equipment Corp., supra, is the precursor of three other cases in which the concrete was delivered to the construction site and thereafter some person or persons were injured in the course of its emplacement. Those cases holding coverage where the cement had left the control of the trucker invariably cite to and quote from Lamberti. See Travelers Insurance Co. v. W. F. Saunders & Sons, Inc., Case 1, 18 A.D.2d 126, 238 N.Y.S.2d 495 (1963), affirmed in memorandum decision 13 N.Y.2d 1019, 245 N.Y.S.2d 597, 195 N.E.2d 308; St. Paul Mercury Insurance Co. v. Huitt, 336 F.2d 37 (6 Cir. 1964); Travelers Insurance Co. v. Employers Casualty Co., Texas Supreme Court, 380 S.W. 2d 610 (1964).

But in San Fernando Valley Crane Service, Inc. v. Travelers Insurance Co., 229 Cal.App.2d 229, 40 Cal.Rptr. 165 (1964), the California intermediate court rejected Lamberti, stating:

> "But the more cogent reasoning leads to the conclusion that when Consolidated, as it had contracted to do, brought the concrete to the job site and deposited it in the receptacle provided by or on behalf of the purchaser, the truck was then unloaded insofar as the concrete so deposited was concerned." 40 Cal.Rptr. at 170.

The reasoning of the California Court of Appeals was approved by the Supreme Court of California two years later in Entz v. Fidelity and Casualty Company of New York, 64 Cal.2d 379, 50 Cal.Rptr. 190, 412 P.2d 382 (1966), from which case we quote since, in our opinion, it appropriately fixes the limits of the "complete operations" rule:

> "In American Auto. Ins. Co. v. American Fid. & Cas. Co., supra, 106 Cal.App. 2d 630, 235 P.2d 645, in which the court determined that 'unloading,' as used in the policy there under consideration, included all acts necessary to make a commercial delivery of the materials transported, it was said at page 636[3], 235 P.2d at page 649: 'As a matter of common knowledge, "commercial delivery" includes "taking the articles from their usual place of storage or assembly *to the place of destination and turning them over to the control or possession of the purchaser or receiver*. Sometimes delivery may be made by depositing things on the sidewalk or on a platform or other convenient place. That, however, is usually indicated *by the custom of the business or agreement of the parties.* Normally a delivery is not completed until the deliveror has finished his handling of the article, has completed his assignment or task of putting the articles into the possession of the receiving party." Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co., supra, 108 Utah 500, 161 P.2d 423, 428, 160 A.L.R. 1251.'

"The accident in the present case took place after the cement had come to a rest. Therefore, if the 'coming to rest' doctrine were applied, there would be no coverage. California, however, is committed to the 'complete operations' rule. Accordingly, we must determine whether the cement had been placed in the hands of the receiver at the designated reception point, in which event the unloading operation with respect to the portion of the cement so delivered would have been completed, or whether the delivery operation was not to be completed until the cement had actually been placed in the post holes." 50 Cal.Rptr. at 194, 412 P.2d at 386. (Emphases supplied.)

The same year the Maryland Supreme Court, in United States Fidelity & Guaranty Co. v. Backus, 243 Md. 121, 220 A.2d 139, also rejected Lamberti and the cases following its reasoning, saying:

"Although the decisions in those cases can perhaps be distinguished from the case at bar upon the precise terms of the contract in this case for the delivery of the concrete, we are of the opinion that even upon the facts in those cases, the courts have expanded the application of the 'loading and unloading' clause beyond what we consider was the intention of the parties to the insurance policies involved in those cases and—with great respect—we decline to follow them.

"The opinions of the courts in the four cases mentioned have, in our opinion, overlooked the basic coverage provided for in the policy which was to provide for payment of sums which the *insured* must pay 'caused by accident and arising out of the ownership, maintenance or use of any automobile.'" 220 A.2d at p. 142. (Emphasis in original.)

■ We fix the limits of the "complete operation" rule consistent with those announced in Entz v. Fidelity and Casualty Company, supra, holding that when the goods have been delivered in the possession of the consignee or his agent or employee and have reached the place designated by the parties, whether by agreement or custom of the business, the responsibility of the consignor terminates and so likewise does liability under the policy of insurance.

In the instant case, the agreed statement of facts provides:

"Valley Redi-Mix Co. was employed by Schnaufer to deliver pre-mixed concrete in mobile mixer trucks. Delivery was to be to the east side entrance of the new building. There the concrete was to be delivered to and emptied into a steel bucket at that side entrance. The contract did not require Valley to deliver the concrete to the forms.

"Richard J. Follet, doing business as Sloane's Transfer & Storage Co. was employed by Schnaufer to transport the concrete from the east entrance to the forms."

■ We conclude that the concrete was received from Valley Redi-Mix by its consignee Schnaufer through its employee Follet at the place of designation, a steel bucket at the east side of the building. The Valley Redi-Mix truck was unloaded within the meaning of the New Zealand policy when the concrete was poured down through the chute into the bucket, and it was thereafter in possession of and being transported by the Follet crane, an agency of the consignee. We hold that the accident occurred after the concrete was unloaded.

Judgment affirmed.

McFARLAND, C. J., and UDALL, V. C. J., concur.