444 P.2d 446

Herbert C. LAWRENCE and Ola Mae Lawrence, his wife; Sam Van Dyke and Almaetie Van Dyke, his wife, Appellants,

v.

BENEFICIAL FIRE & CASUALTY INSURANCE COMPANY and Central Mutual Insurance Company, Appellees.

No. I CA–CIV 510.

Court of Appeals of Arizona.

Aug. 19, 1968.

Rehearing Denied Sept. 27, 1968.

Review Denied Nov. 12, 1968.

Harold Goldman and Charles H. Ripps, Phoenix, for appellants.

Gust, Rosenfeld & Divelbess, by Richard A. Segal, Phoenix, for appellee Beneficial Fire & Casualty Ins. Co.

O'Connor, Cavanagh, Anderson, West over, Killingsworth & Beshears, by Thomas A. McGuire, Phoenix, for appellee Central Mutual Ins. Co.

FREY, Superior Court Judge.

This is an appeal by the plaintiffs (appellants) from a judgment granting defendants' (appellees') motion to dismiss and further granting summary judgment against plaintiffs' Count I for declaratory judgment as to the rights and duties of plaintiffs and defendants under the "uninsured motorist" clause of a policy of insurance issued to plaintiffs by defendants.

The only issue involved is whether an unknown motorist proximately causing an accident should be deemed to be driving "an uninsured highway vehicle" under an uninsured motorist provision of insurance policies which require "physical contact" as a prerequisite to liability and where there has been no direct physical contact by the unknown motorist's vehicle with the insured's vehicle. The facts are without dispute:

On March 10, 1965, the Central Mutual Insurance Company issued its policy of insurance to Sam Van Dyke. This policy of insurance contained an uninsured motorist clause entitled "Protection Against Uninsured Motorists Coverage." On May 1, 1965, Beneficial Fire & Casualty Insurance Company issued an insurance policy to Herbert C. Lawrence, which policy contains

an uninsured motorists clause substantially the same as the one contained in the Central Mutual policy.

On May 17, 1965, and while each of the above mentioned policies of insurance was in full force and effect, plaintiffs Herbert C. Lawrence, Ola Mae Lawrence and Almaetie Van Dyke were injured in a Ford automobile owned and operated by Herbert C. Lawrence. The proximate cause of the accident must be assumed to be the negligence and recklessness of an unknown motorist who, at a high rate of speed, overtook the vehicle in which the plaintiffs were riding and made a sharp right turn directly in front of them, forcing plaintiffs' vehicle to swerve off the roadway and into a telephone pole.

The incident was observed by an eyewitness whose affidavit avers to the fact that a 1955 or 1956 Dodge or DeSoto automobile was proceeding in a westerly direction in the center lane of East Buckeye Road in Phoenix. The plaintiffs' Ford automobile was proceeding in the same direction, in the curb lane. Suddenly the Dodge or DeSoto automobile made a right-hand turn directly in the path of the Ford, so as to go north on 1st Street. The Ford made a right turn to avoid colliding with the Dodge, but careened out of control, off the road and ran into a telephone pole. As a result of the collision, the passengers in the Lawrence automobile suffered severe injuries.

Both insurance policies contained the standard "hit and run" vehicle clause to protect against damage by unknown motorists as a part of the "uninsured motorists" coverage, to wit:

"'Hit and run automobile' means an automobile which causes bodily injury to the insured, *arising out of physical contact* of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (a) there cannot be ascertained the identity of either the operator or the owner of such 'hit and run automobile' * * *". (Emphasis added)

The appellants contend that the "Uninsured Motorists" coverage in the subject insurance policies contains "conflicting and repugnant language" granting broad coverage in bold type or on the cover page and attempting to exclude coverage in the lower case type of the succeeding pages of the policies. It is contended by the appellants that an ambiguity is created when the aforementioned hit and run motorist coverage is read with the general liability coverage clause found on the cover page of the Central Mutual Insurance Company's policy and similar language found in the body of the Beneficial Insurance Company policy, to wit:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, arising out of the ownership, maintenance or use of an owned automobile or a nonowned automobile * * *".

And as to the Beneficial Insurance Company:

"* * * to pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile 'because of bodily injury' * * *".

The essence of this appeal is the contention that the coverage which the ordinary layman might reasonably expect to receive based upon a reading of the above general liability paragraphs alone, has been whittled away by a series of definitions and sub-definitions with the result that the lack of clarity in the attempted exclusions should be construed against the insurers.

We are unable to agree with the contentions advanced by the appellants in this appeal. In fact, some are rather novel; i. e., that all qualifying material be disregarded unless contained in that portion of the policy summarizing the coverage. It appears to be acceptable industry practice that the general liability coverage clause usually found on the cover page or nearest under a bold-faced subheading, is subsequently limited by a

series of definitions or conditions. If every condition or requirement of the contract were to be set out under headings entitled "exclusions", "limitations", or "definitions", it would amount to a change in form only; which form has long been established in the insurance business. Such changes would, in all likelihood, be subject to the same type of criticism now voiced by appellants; i. e., that the exclusions are so long that the inclusions are misleading. It might be said the failure to place the word "exclusion" in bold type alongside every definition or subheading was misleading. It might also be urged that the whole contract would have to be in bold type or entirely contained on one page.

■■■ We find nothing misleading or ambiguous about the wording used in both policies to define "hit and run automobile" or in setting out the requirement of physical contact. If we ignore or do away with the physical contact requirement we would be rewriting the contract between these parties, and would be rendering the phrase "hit and run" meaningless. "Hit", in the ordinary sense, requires some "physical contact". If this were not the case, and if we hold that no contact is required, then we would be rewriting the policy to have it contain "miss and run automobile" coverage, or "evasive action" coverage. We cannot expand the language used beyond its plain and ordinary meaning, nor should we add something to the contract which the parties have not put there. Dairyland Mutual Insurance Co. v. Andersen, 102 Ariz. 515, 433 P.2d 963 (1967).

■■■ Reading the whole of the applicable provisions of the policy in question, we find nothing misleading in the general liability clause wherein the insurance companies obligate themselves to pay "all sums which the insured shall be legally entitled to recover from the owner or operator of an uninsured highway vehicle." Of course, when read separately, without reference to the attendant language and out of context, it is inconsistent with the "hit and run vehicle" definition which limits liability to bodily injury arising out of physical contact. From a fair and reasonable examination of the policies in question, it is clear that the general liability provisions are limited and defined by subsequent provisions. Thus, one cannot with fairness and reason say the "hit and run vehicle" definition and the general liability coverage provision are inconsistent. This "inconsistency" is both a limitation and a clarification. It states the obvious, that hit and run under this policy requires physical contact. The definitions are not unusual for this type of coverage nor are they "hidden" out of context. These policies are standard in form— not one-of-a-kind contracts where a limitation could be concealed by a clever and scheming draftsman. If such were the case, equity might grant relief under some circumstances. But such is not the case here. The subject policies do not have any earmarks of deceptive draftsmanship, designed to confuse the ordinary layman as the Supreme Court of New Hampshire found in Peerless Ins. Co. v. Clough, 105 N.H. 76, 193 A.2d 444 (1963), cited by appellants. Nor is the physical contact limitation hidden on the back cover of the policy as was a limitation invalidated in Fischer v. Jefferson Insurance Co., 156 So.2d 777 (Fla.App.1963), which appellant claims is "squarely in point". No ambiguity exists in this case in either the general liability coverage clause or in the hit and run definition nor does ambiguity result when the two are read together. We will not twist an ordinary, necessary and logical drafting "inconsistency" into an ambiguity. Where words are given standard meanings and a lack of coverage is the result, the language should not be treated so as to create ambiguity which would result in the opposite of what was so expressed. Malanga v. Royal Indem. Co., 4 Ariz.App. 150, 418 P.2d 396 (1966); D.M.A.F.B. Federal Credit Union v. Employers Mutual Liability Ins. Co. of Wis., 96 Ariz. 399, 396 P.2d 20 (1964).

Restatement of Contracts, Section 236, Paragraph C, states:

"Where there is an inconsistency between general provisions and specific provisions,

the specific provisions ordinarily qualify the meaning of the general provisions."

This section has been cited with approval by our Supreme Court since 1944. Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674 (1944). To treat this ordinary and logical inconsistency as an ambiguity would controvert the clear meaning or coverage of the contract.

 A contract of insurance is like any other contract. It is not a collection of separate unrelated parts. It is a whole document; each part must be read and interpreted in connection with all other parts thereof. When the meaning and intent of the contract is clear, it is not the prerogative of the courts to change or rewrite it in an attempt to avoid harsh results.

> "As a generality, the cases agree that liability must be ascertained from the language used in the policy, it being the cardinal principle of construction that the intention of the parties as derived from the language must prevail. This is, of course, the accepted rule in Arizona. Dairyland Mutual Insurance Co. v. Andersen, 102 Ariz. 515, 433 P.2d 963; D.M. A.F.B. Federal Credit Union v. Employers Mutual Liability Insurance Co., 96 Ariz. 399, 396 P.2d 20."

Fireman's Fund Insurance Co. v. New Zealand Insurance Co., 103 Ariz. 260, 439 P.2d 1020 (1968).

Applying the principles hereinabove set forth as enunciated by the Arizona Supreme Court, we must hold that the policies of insurance involved herein did not afford the coverage as sought by plaintiffs. The trial court should be affirmed.

Judgment affirmed.

CAMERON, C. J., DONOFRIO, J., concur.

NOTE: Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge WILLIAM C. FREY was called to sit in his stead and participate in the determination of this decision