593 P.2d 930

**FARMERS HOME MUTUAL INSURANCE COMPANY, a Foreign Corporation, Appellant,**

v.

**Michael ADDELIA and Alice M. Addelia, husband and wife, Appellees.**

No. 1 CA–CIV 3919.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 16, 1979.

Hughes & Hughes, P. C., by Coit I. Hughes, Phoenix, for appellant.

Frederick M. Aeed, Phoenix, and Traynor & Herbert, P. C., by John D. Herbert, Chandler, for appellees.

## OPINION

FROEB, Judge.

Michael and Alice Addelia (the Addelias) purchased a Duffner-Kimberly lampshade for $500.00 which they used in their home for two and one-half years. Then, in response to an advertisement, they turned the lampshade over to Arizona Jewelry Company on November 30, 1974. Arizona Jewelry Company represented that it would auction and sell the items received in response to the advertisement. The auction was never held and the principals of the Arizona Jewelry Company, as well as the shade in question, vanished.

Notice of the loss was given to Farmers Home Mutual Insurance Company (Farmers) and the claim was rejected on the basis of certain policy exclusions. The Addelias then filed a complaint for declaratory judgment asking that the court construe the policy as covering the loss. The complaint further sought judgment in the amount of $5,000.00. The Addelias filed a motion for partial summary judgment on the issue of coverage, which was granted. The damage issue was then tried to the court and judgment was entered in favor of the Addelias for $3,000.00. Farmers' motion for a new trial on liability and damages was denied and this appeal followed.

Farmers appeals from (1) the summary judgment in favor of the Addelias on the issue of liability; (2) the judgment after trial on the issue of damages awarding $3,000.00 plus the Addelias' costs; and (3) the denial of Farmers' motion for new trial on the issues of liability and damages.

Farmers contends that the lampshade is excluded from coverage by certain exclusions listed in the policy and that, even if there is liability for the loss of the property, the coverage is limited by a specific liability limiting clause applicable to the property. We find that the property is not excluded from the policy, but that the liability limiting clause applies to it.

It is agreed that the lampshade is within the policy category of "Unscheduled Personal Property" under Coverage C, which states:

This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling and owned or used by an Insured, while on the described premises and, at the option of the Named Insured, owned by others while on the portion of the premises occupied exclusively by the Insured.

The stated amount of coverage for the Addelias' unscheduled personal property is $16,250.00.

■ Farmers' first contention is that certain exclusions under Coverage C specifically apply to the loss of the lampshade after it was given to Arizona Jewelry Company. One exclusion reads:

10c. Theft Exclusions applicable to property away from the described premises: This policy does not apply to loss away from the described premises of:

(1) property while in any dwelling or premises thereof, owned, rented or occupied by an Insured, except while an Insured is temporarily residing therein.

. . .

We find the theft exclusions clause in paragraph 10(c) does not apply to the loss of the lampshade. There is no indication in the record that the premises of the Arizona Jewelry Company were owned, rented, or occupied by the Addelias.

The other exclusion urged by Farmers provides:

This coverage [Coverage C] excludes:

*　　*　　*　　*　　*　　*

5. property carried or held as samples or for sale or for delivery after sale. . .

Farmers argues that the lampshade was held by the Addelias for sale when they turned it over to Arizona Jewelry Company to be sold. The Addelias argue that the exclusion under consideration does not apply to a household furnishing which the owner decides to sell, but rather to items held in connection with a business or commercial enterprise of the policyholder.

In *Last v. West American Insurance Company*, 139 N.J.Super. 456, 354 A.2d 364 (1976), a gun collector, who did not ordinarily trade in guns, decided to sell a few of his guns. He turned them over to a gun shop on consignment for sale. The loss of the guns occurred while they were on the shop's premises. The New Jersey court held that the guns were "held for sale" and, therefore, were within the exclusion. In accord with the New Jersey interpretation of the

exclusion is *American Motorist Insurance Company v. Vermont*, 115 Ga.App. 663, 155 S.E.2d 675 (1967).

Contrary to these cases is the decision in the Maryland case *State Farm Fire and Casualty Company v. Quirt*, 28 Md.App. 603, 346 A.2d 497 (1974). Although there was a fact question whether the insured delivered his ring and brooch to the jeweler on consignment for sale, or for the jeweler to remodel, the court held that even if the ring and brooch had been delivered on consignment they were not excluded from coverage by the exclusionary language "property carried or held as samples or for sale or for delivery after sale." The Maryland court looked at the exclusion in the context of the purpose of the policy and other exclusions accompanying the one in question. The court said:

We note first that the policy here is a homeowner's policy, intended to insure property related to the home. . . . Property "carried or held as samples" could only refer to a business enterprise, contemplating sales to be made from exhibition of the samples. The clause designating articles carried or held "for sale or for delivery after sale" immediately followed by "or for rental to others" connotes, we think, as to both sale and rental, a business transaction. . . . We find it clear, contrary to the opinion of the court in *Vermont*, [cited above] that the clause, articles carried or held for sale, refers to property related to the insured's usual occupation or business. It appears to us incongruous that an article which, without question, was included under Coverage B [here, Coverage C] would immediately be excluded because the owner-insured decided to sell it, not as a business venture, but to dispose of it with recoupment of its cost. A set of golf clubs, no longer used by a weekend golfer through frustration with his game, or discarded upon acquisition of a later model, would be, when advertised for sale, stripped of protection against loss afforded by a homeowner's policy. From the language employed and from the charac-

ter of the contract, considering its object and purpose, we think that the parties here did not intend such result.

28 Md.App. at 611–612, 346 A.2d at 502.

We agree with the interpretation placed upon the policy exclusion by the Maryland court. Personal property held by the insured for other than a business or commercial purpose does not come within the exclusion by the mere fact that the owner decides to sell it.

■ Farmers' second contention is that if there is liability under the policy then it is limited to ten percent of the insurance provided for in Coverage C. Since the amount specified in Coverage C is $16,250.00, Farmers argues that its liability is limited to $1,625.00. The argument is based on the following provision of Coverage C:

This coverage also includes such unscheduled personal property while elsewhere than on the described premises, anywhere in the world:

\*   \*   \*   \*   \*   \*

3. but the limit of this Company's liability for unscheduled personal property away from the premises shall be an *additional* amount of insurance equal to 10% of the amount specified for Coverage C, but in no event less than $1,000.00. (emphasis added).

Farmers contends that the coverage provided for unscheduled personal property while not on the described premises is in effect an extra coverage. Coverage C is primarily designed to cover unscheduled personal property that is on the described premises. Farmers points out that, since it provides this extra coverage for property off the described premises, it is appropriate to limit the extra coverage to ten percent of the Coverage C amount. The word "additional," it argues, reflects the fact that the coverage provided for property not on the described premises is over and above that provided by the basic policy.

The Addelias argue that because of the use of the word "additional," the coverage for such property is 110 percent of the underlying $16,250.00, or $17,875.00. They alternatively argue that because of the use of the word "additional," the clause is ambiguous.

We do not agree with the Addelias' construction of the limiting clause, nor do we agree that the clause is ambiguous. When read as a whole, it is clear that the Farmers policy provided an extra amount of insurance for unscheduled personal property not on the described premises and that such extra coverage was limited to the ten percent of the Coverage C amount.

This court has said:

A contract of insurance is like any other contract. It is not a collection of separate unrelated parts. It is a whole document; each part must be read and interpreted in connection with all other parts thereof. When the meaning and intent of a contract is clear, it is not the prerogative of the courts to change or rewrite it in an attempt to avoid harsh results.

*Lawrence v. Beneficial Fire & Casualty Insurance Company*, 8 Ariz.App. 155, 159, 444 P.2d 446, 450 (1968). In *Fireman's Fund Ins. Co. v. New Zealand Ins. Co.*, 103 Ariz. 260, 439 P.2d 1020 (1968), our Supreme Court noted that:

As a generality, the cases agree that liability must be ascertained from the language used in the policy, it being the cardinal principle of construction that the intention of the parties as derived from the language must prevail. This is, of course, the accepted rule in Arizona.

103 Ariz. at 261, 439 P.2d at 1021.

While we have not been referred to any case construing this particular policy language, the Maryland court in *State Farm Fire and Casualty Company v. Quirt*, above, commented upon the language in question. There the policy read:

The limit of this company's liability for such property while away from premises shall be an additional amount of insurance equal to 10% of the amount specified for Coverage B [here Coverage C] but in no event less than $1,000.00.

The court, in an explanatory footnote, said:

Within the frame of reference of this case, the main distinction between unscheduled personal property on the prem-

**184**

ises and away from the premises is that, with respect to the latter, liability as to amount is more limited. In Quirt's policy the limit as to unscheduled personal property was $4,000. When such property was away from the premises the limit was 10% of the amount specified for coverage, or $400, but in no event less than $1,000. As the jewelry was valued at $2,350, if it was within the ambit of Coverage B, the amount of liability was fixed at $1,000.

28 Md.App. at 606, 346 A.2d at 499.

We hold that the liability of Farmers for the loss of the lampshade is limited to ten percent of the Coverage C amount. Since the Addelias insured their unscheduled personal property for $16,250.00, the lampshade when lost was covered to the extent of $1,625.00.

The Addelias argue that the trial court's award of $3,000.00 could be upheld as an award of damages up to the ten percent figure ($1,625.00) plus consequential damages incurred by the Addelias. Although the complaint sought consequential damages, no evidence of consequential damages was presented to the trial court. Further, since the trial court did not reach this issue, there is no basis for asserting that consequential damages were included in the judgment.

The judgment of the trial court is affirmed as to the finding of coverage under the policy, but is modified to reduce the amount of the damages award to $1,625.00 plus interest from the date the judgment was originally entered.

DONOFRIO, Acting P. J., and HAIRE, J., concur.