IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

APOLLO EDUCATION GROUP, Inc., FKA Apollo Group, Inc.
*Plaintiff-Appellant*,

*v.*

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
A PENNSYLVANIA CORPORATION,
*Defendant-Appellee.*

No. CV-19-0229-CQ
Filed February 17, 2021

United States District Court for the District of Arizona
No. 2:15-cv-01948-SPL

Certified Question from the
United States Court of Appeals for the Ninth Circuit
Case No. 17-17293
**QUESTION ANSWERED**

COUNSEL:

Mark J. DePasquale, Mark J. DePasquale, P.C., Phoenix; Mark S. Hersh, Reed Smith, LLP, Chicago, IL; and Douglas E. Whitney, Douglas Whitney Law Offices, LLC, Chicago, IL, Attorneys for Apollo Education Group, Inc.

Bennett Evan Cooper, Vail C. Cloar, Dickinson Wright, PLLC, Phoenix; and Timothy M. Strong, Steptoe & Johnson, LLP, Washington, DC, Attorneys for National Union Fire Insurance Company of Pittsburgh, PA

David L. Abney, Ahwatukee Legal Office, P.C., Phoenix, Attorney for Amicus Curiae United Policyholders

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BEENE, and MONTGOMERY joined. JUSTICES GOULD and LOPEZ dissented.

———————

JUSTICE BOLICK, opinion of the Court:

¶1 The United States Court of Appeals for the Ninth Circuit certified the following question to this Court: "What is the standard for determining whether National Union unreasonably withheld consent to Apollo's settlement with shareholders in breach of contract under a policy where the insurer has no duty to defend?" The court clarified its question by asking: "Should the federal district court assess the objective reasonableness of National Union's decision to withhold consent from the perspective of an insurer or an insured?"

¶2 We hold that, under a policy without a contractual duty to defend, the objective reasonableness of the insurer's decision to withhold consent is assessed from the perspective of the insurer, not the insured. The insurer must independently assess and value the claim, giving fair consideration to the settlement offer, but need not approve a settlement simply because the insured believes it is reasonable.

## BACKGROUND

¶3 Apollo Education Group, Inc. ("Apollo") is a higher-education service provider that operates several universities in various countries. At the time this case arose, it was a publicly traded corporation. National Union Fire Insurance Company of Pittsburgh, PA ("National Union") insured Apollo's directors and officers for liability up to $15 million under a directors and officers' ("D&O") liability policy. The policy included no duty to defend the insured if sued. Instead, Apollo would defend itself against any claims. Correspondingly, the policy contained no clause requiring the insurer to cooperate with a defense provided by National Union ("cooperation clause").

¶4 The obligations of the parties were further specified as follows ("consent-to-settlement provision"):

> The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense, the prosecution and the negotiation of any settlement of any Claim that involves or appears reasonably likely to involve the Insurer.

¶5　　　　On October 18, 2006, Apollo's stock dropped 22.9%, following a *Wall Street Journal* article detailing an industry practice of backdating stock options for corporate executives, an investigation of Apollo by the United States Attorney's Office for the Southern District of New York and the Securities and Exchange Commission, and an internal investigation followed by a public disclosure by Apollo that 57 of 100 stock option grants to executives during the relevant timeframe used incorrect dates for accounting purposes, together with a statement admitting "various deficiencies in the process of granting and documenting stock options."

¶6　　　　A class action followed in the United States District Court for the District of Arizona. The district court dismissed the complaint with prejudice for failure to particularly allege falsity as required by Rule 9(b) of the Federal Rules of Civil Procedure. The court then denied a request for leave to amend and a motion to reconsider. Plaintiffs appealed to the Ninth Circuit.

¶7　　　　While the appeal was pending, the plaintiffs and Apollo entered into mediation, which eventually resulted in an agreement to settle for $13,125,000. Given costs incurred to that point, the D&O policy was down to $13,500,000 to cover a settlement.

¶8　　　　National Union refused consent to the settlement. Nonetheless, Apollo entered into the settlement agreement, paying the plaintiffs out of pocket. Apollo then sued National Union to recover the settlement amount, alleging both breach of contract and bad faith.

¶9　　　　The district court granted summary judgment to National Union, and Apollo appealed. Finding that it could not determine under existing precedent how this Court would analyze the breach-of-contract

claim, the Ninth Circuit certified the question to this Court. We have jurisdiction pursuant to article 6, section 5(6) of the Arizona Constitution, A.R.S. § 12-1861, and Rule 27(a)(1) of the Rules of the Supreme Court of Arizona.

## DISCUSSION

**¶10** When two parties with a contractual relationship both have an interest in the defense of an action but only one has control over that defense, conflicts are bound to occur. These conflicts are mediated by distinct bodies of law: contract law, which governs the agreement between the parties, and tort law, which provides an action for bad faith. This case presents solely contract law issues.

**¶11** We begin with the language of the policy. *See First Am. Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 350 ¶ 8 (2016). "An insurance policy is a contract, and in an action based thereon the terms of the policy must govern." *Dairyland Mut. Ins. Co. v. Andersen*, 102 Ariz. 515, 517 (1967). In interpreting a contract, we examine the language to deduce the intention of the parties. *Fireman's Fund Ins. Co. v. New Zealand Ins. Co.*, 103 Ariz. 260, 261 (1968). We interpret that language according to its "plain and ordinary meaning." *Teufel v. Am. Fam. Mut. Ins. Co.*, 244 Ariz. 383, 385 ¶ 10 (2018). If the terms are clear, we enforce them unless the contract is illegal or violates public policy. *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 115–16 ¶ 39 (2017). We also interpret the terms in the broader context of the overall contract. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593 ¶ 9 (App. 2009).

**¶12** Here, the contract terms speak clearly and directly to whether the perspective of insurer or insured should guide the determination of whether an agreement to settle by an insured is reasonable. The consent-to-settlement provision states that "[t]he Insureds shall not . . . enter into any settlement agreement . . . without the prior written consent of the Insurer." Making the same point a different way, "[o]nly those settlements . . . which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy." The provision further states that "[t]he Insurer's consent shall not be unreasonably withheld."

**¶13** The provision refers to the insured in this context only in terms of what it may not do: enter into any settlement without the insurer's consent. Otherwise, it speaks entirely to the insurer's perspective. First, it

refers three times to the insurer's "consent." Consent by its nature means a deliberate, volitional act on the part of the person conveying it. *Consent*, Black's Law Dictionary (11th ed. 2019) ("A voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose, esp. given voluntarily by a competent person."). In turn, consent "shall not be unreasonably withheld" by the insurer. The use of an adverb ("unreasonably") in this context sets the standard of behavior to which the person who is taking the action is held. *See, e.g.*, *Honeycutt v. United States*, 137 S. Ct. 1626, 1633 (2017) ("obtained, directly or indirectly"); *Flores-Figueroa v. United States*, 556 U.S. 646, 650–52 (2009) (actions "knowingly" taken). Here, the action referred to is the insurer withholding consent to settlement; the requirement that withholding consent may not be "unreasonable" is directed to the insurer as well. Thus, the policy's plain language strongly suggests that the reasonableness of withholding consent is to be viewed from the insurer's perspective.

¶14　　　　This interpretation is supported by the contract's overall context. Here, the parties agreed that the defense of any action would be controlled by the insured, with any settlement subject to the insurer's consent. It makes sense that the reasonableness of such consent would not be determined from the perspective of the insured, because the insured has a strong and often adverse interest in settling within policy limits, regardless of the merits of a claim. Rather, where the insurer has no control over the litigation, it is more reasonable that the insurer's perspective, which necessarily includes consideration of the strength of the underlying claim in accord with its interest in avoiding unnecessary payment, should prevail. Of course, the converse would be true where the insurer has control over the defense. The terms as agreed to by these parties reflects this reasonable understanding of the overall nature and context of the contract.

¶15　　　　We are unpersuaded by Apollo's argument that we should construe these terms against the insurer. That rule of construction applies when the language is ambiguous; this language is not. *See Teufel*, 244 Ariz. at 385 ¶ 10 (construing ambiguity against the insurer only when it remains after applying all other means of interpretation). Furthermore, the rule exists to protect ordinary consumer insurance purchasers against standardized contracts whose language is written by the insurers, who should be able to avoid ambiguity. *See Equity Income Partners, LP v. Chicago Title Ins. Co.*, 241 Ariz. 334, 338 ¶ 13 (2017). Here, the D&O policy was negotiated by two sophisticated parties, so that even if the policy terms

remained ambiguous after application of secondary interpretive principles, that rule of construction would not apply. *See Noble v. Nat'l Am. Life Ins. Co.,* 128 Ariz. 188, 189–90 (1981); *cf. Abboud v. Nat'l Union Fire Ins. Co.*, 163 A.3d 353, 358 (N.J. Super. Ct. App. Div. 2017) (noting "reasonable expectations" doctrine applies primarily to "insurance obtained by an unsophisticated consumer").

**¶16**      Apollo argues that the outcome here is controlled by this Court's decision in *United Services Automobile Association v. Morris*, which held that "[t]he test as to whether the settlement was reasonable and prudent is what a reasonably prudent person *in the insured['s] position* would have settled for on the merits of the claimant's case." 154 Ariz. 113, 121 (1987) (emphasis changed).

**¶17**      The questions addressed in *Morris*, which involved a policy unlike the D&O policy here, were whether "insureds being defended under a reservation of rights [may] enter into a settlement agreement without breaching the duty to cooperate and, if so, [whether] the settlement [is] binding on the insurer." *Id.* at 114. *Morris* involved a homeowner's policy in which the insurer had a duty to defend, which in turn obligated the insured to cooperate, and also allowed the insurer to defend under a reservation of rights. Under a duty to defend, although an insurer is obliged to defend claims that may not be meritorious, it "obtains the advantage of exclusively controlling the litigation. This control allows the insurer to obtain a fair adjudication of its liability and to protect itself against the possibility of an insured colluding with the injured party to the prejudice of the insurer." *Id.* at 117.

**¶18**      The Court recognized in *Morris* that when the insurer defends under a reservation of rights, the insureds are "placed in a precarious position." *Id.* at 118. The insurer could invoke the cooperation clause to prevent the insured from settling. The insured could still be liable for a jury verdict in excess of the policy limits and could still also be denied coverage under the reservation of rights. *Id.* at 118–21.

**¶19**      For those reasons, the Court observed that an "insurer that performs the duty to defend but reserves the right to deny the duty to pay should not be allowed to control the conditions of payment." *Id.* at 119. Thus, the Court held "that the cooperation clause prohibition against settling without the insurer's consent forbids an insured from settling only claims for which the insurer unconditionally assumes liability under the

policy." *Id.*; *see also Damron v. Sledge*, 105 Ariz. 151, 153 (1969) (allowing an insured to enter a settlement agreement without breaching the cooperation clause in certain circumstances). When the insurer has reserved its rights to contest coverage and an insured settles a claim without the insurer's consent, the insurer is bound by the settlement if it was given notice and an opportunity to defend, and if the settlement reflected what a reasonably prudent person in the insured's position would have settled for on the merits of the case. *Morris*, 154 Ariz. at 120–21.

**¶20**        The *Morris* context is different in so many ways from the policy before us that *Morris* itself implies the opposite result here. The duty to defend was central to the holding in *Morris*, as were the insurer's reservation of rights and the insured's duty to cooperate. *See Webb v. Gittlen*, 217 Ariz. 363, 369 ¶ 32 (2008) (describing the *Morris* rule, "that a stipulated judgment may bind the insurer arises from the insurer's contractual obligations to defend and indemnify its insured").[1] *Morris* determined whether the cooperation clause was breached by the settlement, 154 Ariz. at 118, so it made sense to consider the reasonableness of the settlement from the insured's perspective. Here, there is no cooperation clause. And, of course, the policy in *Morris* did not have a provision like the one here providing that consent shall not be unreasonably withheld.

**¶21**        Crucially, the central feature giving rise to the Court's departure from the policy language and the exception to the duty to cooperate in *Morris* was based on who had "the advantage of exclusively controlling the litigation." *Id.* at 117. In *Morris*, the insurer possessed that control; here, absent a duty to defend, the insured does. *See* Richard Squire, *How Collective Settlements Camouflage the Costs of Shareholder Lawsuits*, 62 Duke L.J. 1, 10–11 (2012) ("D&O policies are different from . . . automobile and homeowners liability policies" because "the corporate managers rather than the insurers control the defenses of shareholder lawsuits.").

**¶22**        In a D&O policy like the one here, no reason exists to not enforce the consent-to-settlement provision as plainly written and agreed to by the parties. The danger in *Morris* was leaving the insured at the insurer's mercy; here, the risk is that the insured will use the insurer's

---

[1] For that reason, other duty-to-defend cases relied on by Apollo are inapplicable here as well. *See, e.g.*, *Himes v. Safeway Ins. Co.*, 205 Ariz. 31 (App. 2003).

coverage to assure it will escape liability that exceeds policy limits. Thus, unlike in *Morris*, where the insured was powerless to avoid a "precarious position," there is no need to protect the insured here from an unfair allocation of risk, such as by implying a duty to accept settlements that are reasonable from the insured's perspective. *Morris*, 154 Ariz. at 118. Rather, as the contract provides, courts must determine whether consent was reasonably withheld. *See, e.g.*, *Schwartz v. Twin City Fire Ins. Co.*, 492 F. Supp. 2d 308, 318–19 (S.D.N.Y. 2007), *aff'd*, 539 F.3d 135 (2d Cir. 2008); *Piedmont Off. Realty Tr., Inc. v. XL Specialty Ins. Co.*, 771 S.E.2d 864, 865–66 (Ga. 2015); Allan D. Windt, *Insurance Claims and Disputes* § 6:29 n.1 (6th ed. 2019) ("Since the insured wants to spend not its own money, but someone else's money, the issue is not whether the insured had a reasonable basis to pay a particular amount in settlement, but whether the insurer had a reasonable basis not to agree to pay that amount of money in settlement."). Thus, where there is no duty to defend, and the contract requires an insurer to not unreasonably withhold consent to a settlement proposed by the insured and a third party, we will examine whether the insurer's decision to withhold consent to a settlement is reasonable from the insurer's perspective.

**¶23** The dissent joins us in finding that *Morris* does not apply here. *Infra* ¶ 46. It asserts, however, that reasonableness should be determined as a matter of "equal consideration," rather than from the insurer's perspective. The dissent ignores the contract language, instead proclaiming that "the policy is silent" on the issue of whose perspective should guide the question of a settlement's reasonableness. *Infra* ¶ 34. The dissent then proceeds to displace the policy's terms with the implied covenant of fair dealing. *Infra* ¶ 38.

**¶24** As discussed above, the parties negotiated provisions addressing the very question at issue here. The policy vests the power of consent to a settlement in the insurer, modifying that power with the requirement that the insurer may not "unreasonably" withhold consent. Thus, the standard here should focus on the reasonableness of the insurer's conduct, as it was the party given the right to withhold consent under the contract.

**¶25** The dissent also contends that equal consideration should apply because this is a third-party action rather than a first-party action. *Infra* ¶ 41, citing *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 258 (1990). As the dissent explains, first-party actions arise from the

insurer's obligation to pay benefits directly to the insured for a loss, while third-party claims are based on an obligation to indemnify the insured against liability to third parties. *Infra* ¶¶ 40–41.

¶26 The dissent urges that in the context of a third-party action, the duty to defend is irrelevant. To the contrary, in addition to the policy terms, the duty to defend is the central factor in determining whose perspective should guide reasonableness in approving a settlement. In *Clearwater*, the Court discussed the distinction between first-party and third-party claims precisely because the latter usually, but not always, encompasses an insurer's duty to defend. As the Court emphasized, in such circumstances the insurer "takes on the additional responsibility of defending the claim, and typically has exclusive authority to accept or reject offers of settlement." 164 Ariz. at 259. Thus, the Court rejected the "fairly debatable" standard in determining an insurer's duty in third-party cases but retained that standard in first-party cases. *Id.* at 260. But the Court made clear that the heightened standard in third-party actions applies "because of the different relationships and duties that exist between the parties." *Id.* Where "the insurer exclusively controls settlement," the "insured bears a disproportionate share of the risk if the insurer fails to accept a reasonable settlement offer within policy limits . . . . Therefore, although the 'fairly debatable' standard sufficiently protects both parties' interests" where those circumstances are not present, "it inadequately protects the insured's interests" where the insurer has exclusive control, requiring the insurer to consider "the insured's interests equally with its own interests." *Id.*

¶27 Here, the insured controls the litigation. An equal consideration requirement might force an insurer to accept a settlement, controlled entirely by the insured, for the full policy limit, even if the insurer fairly valued the claim at zero or an amount below the policy limit. Thus, where the insurer lacks control over litigation and settlement, we hold that the reasonableness of the settlement must be viewed from the insurer's perspective.

¶28 From that conclusion, it follows that there may be cases in which it would be reasonable for the insured to settle, but also reasonable for the insurer to withhold consent. *See, e.g.*, *Hilco Cap., LP v. Fed. Ins. Co.*, 978 A.2d 174, 179, 180–81 (Del. 2009) (holding that the standard in this context is whether the insurer had "a reasonable basis for its decision to withhold consent," and that it is "not enough for the [plaintiffs] to show

that the settlement offer was reasonable"). At the same time, the insured must receive the bargained-for benefit of its policy. Thus, we next address how to determine reasonableness from the insurer's perspective while protecting the insured's contractual interests.

¶29 Our cases discussing the tort of bad faith help determine whether an insurer reasonably withholds consent to its insured's prospective settlement of a claim. Specifically, whether the insurer acted reasonably is one element of that tort. *See, e.g.*, *Brown v. Superior Court*, 137 Ariz. 327, 336 (1983); *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 153 Ariz. 95, 104 (App. 1986). The inquiry is an objective one: "did the insurance company act in a manner consistent with the way a reasonable insurer would be expected to act under the circumstances"? *Trus Joist Corp.*, 153 Ariz. at 104.

¶30 To act reasonably, the insurer is obligated to conduct a full investigation into the claim. *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 238 ¶ 21 (2000); *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 507 (1992). The Court has described the insurer's role as "an almost adjudicatory responsibility." *Rawlings v. Apodaca*, 151 Ariz. 149, 154 (1986). To carry out this responsibility, the insurer "evaluates the claim, determines whether it falls within the coverage provided, assesses its monetary value, decides on its validity and passes on payment." *Id.* The company may not refuse to pay the settlement simply because the settlement amount is at or near the policy limits. Rather, the insurer must fairly value the claim. *See Zilisch*, 196 Ariz. at 238 ¶ 21. The insurer may, however, discount considerations that matter only or mainly to the insured—for example, the insured's financial status, public image, and policy limits—in entering into settlement negotiations. *See Clearwater*, 164 Ariz. at 259. The insurer may also choose not to consent to the settlement if it exceeds the insurer's reasonable determination of the value of the claim, including the merits of plaintiff's theory of liability, defenses to the claim, and any comparative fault. In turn, the court should sustain the insurer's determination if, under the totality of the circumstances, it protects the insured's benefit of the bargain, so that the insurer is not refusing, without justification, to pay a valid claim. *Rawlings*, 151 Ariz. at 154–55 (describing insurer's duties to the insured); *Noble*, 128 Ariz. at 190 (emphasizing the nature of an insured's contractual expectations).

¶31 Under this formulation, an insurer has every incentive to act prudently, both for itself and its insured. An insurer is unlikely to reject a

settlement if the objective value of the claim is commensurate with the settlement, for it will likely have to pay out regardless. Should the insurer act unreasonably in rejecting the settlement, the insured may challenge that determination, and may file a bad-faith tort action if circumstances warrant, as Apollo is pursuing here.

## CONCLUSION

¶**32** For the foregoing reasons, we answer the Ninth Circuit's certified question as follows: reasonableness is assessed from the perspective of the insurer, not the insured. The insurer must, in deciding whether to consent to a settlement, give the matter full and fair consideration applying the factors set forth in paragraph 30, but need not consider any additional factors that may have induced the insured to settle.

GOULD, J., joined by Lopez, J., dissenting:

¶33        I respectfully dissent.  The Ninth Circuit asked us to provide the standard that applies under Arizona law for determining whether National unreasonably withheld its consent to Apollo's settlement agreement.  They certified this question to us because the policy does not provide the standard.  Simply put, the policy, by its terms, does not state whether the reasonableness of National's decision is viewed from its own perspective or Apollo's.

¶34        Nevertheless, the majority goes to great lengths searching for the answer in the policy.  It fails.  At bottom, the majority's textual analysis simply proves that the policy imposed a duty on National to act reasonably in withholding its consent.  But no one has ever disputed this fact.  Nor has anyone disputed the majority's conclusion that this contractual duty focuses on the reasonableness of National's conduct, as opposed to Apollo's.  Rather, the issue here is whether National breached the *standard of care* that applies to this duty.  The policy is silent on this issue.

¶35        Nevertheless, the majority claims that the policy "clearly and directly," *supra* ¶ 12, states that the reasonableness of National's decision to withhold consent must be viewed from National's perspective, and, as a result, we need not consider the implied covenant of good faith and fair dealing in determining the standard.  Indeed, according to the majority, considering the implied covenant would "displace" the clear and unambiguous terms of the policy.  *Supra* ¶ 23.

¶36        For the reasons discussed below, I disagree with the majority's conclusion.  The answer to the certified question is that, under Arizona law, the implied covenant of good faith and fair dealing required National to give equal consideration to Apollo's interests as well as its own in deciding whether to consent to the settlement agreement.  This framework for third-party settlement offers has been the law in Arizona for decades.

¶37        But what confuses me about the majority's analysis is that, after initially rejecting the equal consideration framework, they ultimately adopt it.  Specifically, in explaining its reasonableness standard, the

majority relies on cases that are based on the implied covenant of good faith and fair dealing. *Supra* ¶¶ 29–30. And then, to make matters more confusing, they craft a standard that is virtually indistinguishable from the equal consideration standard. *Supra* ¶¶ 29–31. In short, there is no consistent analytical framework for their conclusion. As a result, I fear the majority's opinion will create confusion and generate unnecessary litigation for years to come.

## I.

**¶38**    Because the policy does not provide the standard for determining whether National unreasonably withheld consent, we must look to the implied covenant of good faith and fair dealing, which is a part of every insurance contract. *Rawlings*, 151 Ariz. at 153. The essence of that covenant is that "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.*

**¶39**    Although the implied covenant of good faith and fair dealing exists in every contract, in the context of "the insurance relationship [it] is unique from that of other contracts." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 174, 176 (1996). Unlike other contracts, the insured does not seek to "realize a commercial advantage but, instead, seeks protection and security from economic catastrophe." *Rawlings*, 151 Ariz. at 154. Rather, "one of the benefits that flow from the insurance contract is the insured's expectation that his insurance company will not wrongfully deprive him of the very security for which he bargained or expose him to the catastrophe from which he sought protection." *Id.* at 155. Thus, "the insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured." *Id.* at 154. And while the insurer is not "a fiduciary . . . it has some duties of a fiduciary nature," including treating its insured with "[e]qual consideration, fairness and honesty." *Id.* at 155.

**¶40**    Based on the implied covenant of good faith and fair dealing, "an insurance company owes its insured a duty of good faith in deciding whether to accept or reject settlement offers." *Hartford Acc. & Indem. Co. v. Aetna Cas. & Surety Co.*, 164 Ariz. 286, 289 (1990). However, because the

relationships and risks involved in first- and third-party claims are different, we apply different standards to each type of claim. *Clearwater*, 164 Ariz. at 259–60. First-party claims involve the insurer's agreement "to pay benefits directly to the insured," and include coverage for health, disability, and life insurance. *Id.* at 258; *Taylor*, 185 Ariz. at 175–76 (same). First-party claims do not involve liability claims made against an insured by a third party. *Clearwater*, 164 Ariz. at 258–59; *Taylor*, 185 Ariz. at 175–76.

**¶41**        In contrast, a third-party claim involves a third-party who is making a liability claim against the insured. *Clearwater*, 164 Ariz. at 258; *Acosta v. Phx. Indem. Ins. Co.*, 214 Ariz. 380, 383 ¶ 13 (App. 2007). Thus, "third-party coverage arises when the insurer contracts to indemnify the insured against liability to third parties." *Clearwater*, 164 Ariz. at 258. Moreover, because third-party claims involve the potential *liability* of an insured to a third-party claimant,

> The type of claim is not determined by the identity of the party bringing the bad faith action against the insurer. For example, a third-party action might be brought by the *insured* in the event that he is subjected to excess liability by reason of the insurer's bad faith refusal to settle. In that event, the standards applicable to third-party claims would govern the action, although it was brought by the insured, rather than a third-party assignee.

*Clearwater*, 164 Ariz. at 258; *see Taylor*, 185 Ariz. at 175–76 (same).

**¶42**        Because the insured's liability to the claimant may exceed the policy limits, in a third-party claim there is "the added risk of subjecting the insured to liability in excess of the policy limits because of the insurer's bad faith refusal to settle within those limits." *Clearwater*, 164 Ariz. at 259. In contrast, "[f]irst-party claims do not involve the insurer in defending a legal action brought by a third party that could result in financial ruin of its insured." *Id.*

**¶43**        Thus, for first-party claims, we examine the reasonableness of settling a claim from the perspective of the insurer. *See id.*; *Rawlings*, 151 Ariz. at 156. However, "[i]n the third-party context, [the] duty of good faith requires an insurer to give equal consideration to the protection of the insured's as well as its own interests." *Hartford*, 164 Ariz. at 289; *see*

*Clearwater*, 164 Ariz. at 259 (stating that in third-party cases "the duty of good faith and fair dealing requires that an insurer give 'equal consideration' to the interests of its insured in deciding whether to accept an offer of settlement"). Applying this standard, an insurer must consider "the amount of financial risk to which each party is exposed in the event of a refusal to settle," including "the financial risk to the insured in the event of a judgment in excess of the policy limits." *Clearwater*, 164 Ariz. at 259–60.

¶44 Equal consideration applies here because this case involves a third-party claim. The policy, by its terms, provides liability coverage for claims made against Apollo by a third-party. Specifically, the policy states that Apollo "shall not admit or assume any *liability*, enter into any *settlement agreement*, stipulate to any *judgment* . . . without the prior written consent of [National]." (Emphasis added). Further, the policy provides that "[o]nly those *settlements*, stipulated *judgments* and *Defense* Costs which have been consented to by [National] shall be recoverable as Loss under the terms of this policy." (Emphasis added).

¶45 Here, Apollo seeks indemnity from National for its liability to the Teamsters Local 617 Pension & Welfare Funds ("Teamsters"). As is common to third-party claims, the Teamsters' lawsuit against Apollo sought damages in excess of National's policy limits. Nevertheless, the Teamsters' eventually offered to settle their claims against Apollo for an amount within the policy limits. Thus, if National withheld its consent to this settlement agreement without giving equal consideration to the interests of Apollo, it breached the insurance contract, and Apollo was free to enter the settlement agreement without National's consent. *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 9 ¶ 11 (2005); *see also Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 137 (1987) (stating that when an insurer breaches any of its express or implied duties under the insurance contract, thereby exposing an insured to a judgment in excess of the policy limits, the insured "is generally held to be freed" from its obligations under the contract).

## II.

¶46 Apollo urges us to apply the standard set forth in *Morris*, 154 Ariz. at 120–21, which examines the reasonableness of a settlement offer from the perspective of the insured. The majority rejects this standard, and

I agree. Apollo never entered a *Morris* agreement, and, as a result, the unique circumstances involved in examining the reasonableness of such an agreement are not present here. *Supra* ¶¶ 17–20; *Guerrero*, 210 Ariz. at 7 ¶ 1 & n.1, 9 ¶ 9 (same); *Himes v. Safeway Ins. Co.*, 205 Ariz. 31, 37 ¶ 12 (App. 2003) (same).

¶47 In contrast, National urges us to view the settlement agreement from the perspective of the insurer, thereby adopting the standard for first-party claims. The majority apparently agrees. Indeed, the cases cited by the majority in support of its proposed standard involve only first-party claims. *Zilisch*, 196 Ariz. at 238 ¶ 21; *Rawlings*, 151 Ariz. at 153; *Noble*, 128 Ariz. at 190.

¶48 Thus, for the first time in our jurisprudence, the majority applies a first-party standard for settlement offers involving a third-party claim. The majority justifies this holding on the grounds that, because National has no duty to defend Apollo under the policy, equal consideration does not apply. *Supra* ¶ 27. The majority is wrong. The duty of equal consideration is not based on the duty to defend, but rather is based on the implied covenant of good faith and fair dealing. *Supra* ¶¶ 39–43. As a result, the "duty to give equal consideration to offers of settlement exists separate and apart from the duty to defend." *Equity Gen. Ins. Co. v. C & A Realty Co.*, 148 Ariz. 515, 519 (App. 1985); *see Helme*, 153 Ariz. at 137 (stating that apart from its express contractual duties, "insurance carriers owe their insureds . . . the duty to treat settlement proposals with equal consideration"); *see also Mora v. Phx. Indem. Ins. Co.*, 196 Ariz. 315, 319 ¶ 16 (App. 1999) (stating that the implied covenant of good faith and fair dealing gives rise to "a third, implied duty: the duty to treat settlement offers with equal consideration"); *Mut. Ins. Co. of Ariz. v. Am. Cas. Co. of Reading, Pa.*, 189 Ariz. 22, 26 & n.7 (App. 1996) (same), *superseded on other grounds by* A.R.S. § 12-341.01; *State Farm. Mut. Auto. Ins. Co. v. Peaton*, 168 Ariz. 184, 192 (App. 1990) (same).

¶49 Indeed, the duty of equal consideration arises before an insurer has a duty to defend. The duty to defend is triggered when a third-party claimant files a lawsuit and presents the insurer with the complaint. *Manny v. Estate of Anderson*, 117 Ariz. 548, 550 (App. 1977); *Pesqueria v. Factory Mut. Liab. Ins. Co. of Am.*, 16 Ariz. App. 407, 412 (1972); *see Salvatierra v. Nat'l Indem. Co.*, 133 Ariz. 16, 19 (App. 1982) (stating the duty to defend

is generally determined by the face of the complaint). In contrast, the duty to give equal consideration arises when there is an offer to settle a third-party claim within the policy limits. *Fulton v. Woodford*, 26 Ariz. App. 17, 22 (1976); *Peaton*, 168 Ariz. at 192 (same). Thus, an insurer's duty of equal consideration exists before any legal action has been formally initiated. *See Mut. Ins. Co. of Ariz.*, 189 Ariz. at 26 n.7 (stating that unlike the duty to defend, which "is generally determined by the face of the complaint," the duty of insurers to treat settlement proposals with equal consideration "may exist before any legal action has been formally initiated"); *Brisco v. Meritplan Ins. Co.*, 132 Ariz. 72, 74 (App. 1982) (stating that an insurer owes its insured a good faith duty "to terminate a claim against its insured by settlement").

¶50 The majority's reliance on *Clearwater* is also misplaced. There, we held that equal consideration is the standard that applies to third-party claims. *Clearwater*, 164 Ariz. at 259–60. And although we discussed the importance of applying equal consideration when an insurer, through its duty to defend, controls litigation, we never held that equal consideration was based upon an insurer's duty to defend. *Id.* Of course, here, despite the absence of a duty to defend, National *does* have a great deal of control over this litigation by virtue of its authority to accept or reject any settlement agreement negotiated by Apollo's attorneys. Nevertheless, the majority's construction of *Clearwater* would create an anomaly in our jurisprudence, given the fact that we have consistently held that an insurer's duty to give equal consideration to the interests of its insured is separate and independent from its duty to defend. *Supra* ¶¶ 48–49.

¶51 The majority also mistakenly equates equal consideration with the *Morris* standard, claiming that it requires a court to focus on the perspective of the insured. *Supra* ¶ 23. The majority's view appears to be based on the belief that the standard for considering settlement offers is binary: the court must examine the reasonableness of the insurer's decision from *either* the viewpoint of the insurer *or* the insured. However, the law does not support this view. Rather, in contrast to the *Morris* standard, equal consideration requires the insurer to consider *both* its own interests *and* the interests of the insured.

## III.

¶52        The Ninth Circuit's concern that the duty of equal consideration only applies to bad faith tort claims, and therefore is not applicable to Apollo's breach of contract claim, is misplaced.  The Ninth Circuit correctly notes that, as a general matter, an insured's breach of contract claim is separate from its bad faith claim.  Specifically, although a bad faith action is based on the insurance contract, unlike a breach of contract action, it requires proof of the insurer's intent to violate the implied covenant of good faith and fair dealing.  *Taylor*, 185 Ariz. at 176; *Clearwater*, 164 Ariz. at 259.  Thus, "[n]ot every breach of an express covenant in an insurance contract" constitutes bad faith, and, conversely, the implied covenant of good faith and fair dealing may be breached "even though the express covenants of the contract are fully performed."  *Rawlings*, 151 Ariz. at 157, 163; *see Deese*, 172 Ariz. at 508–09 (to same effect); *Borland v. Safeco Ins. Co. of Am.*, 147 Ariz. 195, 200 (App. 1985) (to same effect).

¶53        But here, Apollo's breach of contract and bad faith claims are based on the same allegation: National unreasonably withheld its consent to the subject settlement agreement.  And because there is no standard set forth in the policy itself, based on the implied covenant of good faith and fair dealing, National was required to give equal consideration to the interests of Apollo in deciding whether to consent to the settlement agreement.

¶54        Arizona has spent several decades carefully developing the equal consideration standard to protect insureds from the potential financial ruin they face in third-party claims.  Unfortunately, today, the majority has decided to depart from that jurisprudence.  This will undoubtedly create confusion and generate litigation for years to come.  I therefore dissent.